STAND-ASIDE AND SUBORDINATION AGREEMENT

This Agreement is made as of November 9, 1992, by SPORTS SHINKO (HAWAII) CO., LTD., a Hawaii corporation (hereinbelow called the "Parent Corporation"), SPORTS SHINKO CO., LTD., a Japanese corporation, and SPORTS SHINKO (USA) CO., LTD., a Delaware corporation (hereinbelow individually called an "Affiliate" and collectively called the "Affiliates") and SPORTS SHINKO (MILILANI) CO., LTD., a Hawaii corporation (hereinbelow called the "Debtor"), in favor of BANK OF HAWAII, a Hawaii corporation (hereinbelow called the "Bank").

The Bank has loaned $6,997,955.42 to the Debtor and is additionally making a construction loan in the amount of $5,000,000 and a $5,000,000 revolving line of credit available to the Debtor (hereinbelow collectively called the "Bank Loans") on the terms and subject to the conditions stated in a Restated Note for $6,997,955.42, an Additional Charge Note for $5,000,000 and a Revolving Note for $5,000,000, all dated November 9, 1992.

The Parent Corporation owns 100% of the capital stock of the Debtor, Sports Shinko (USA) Co., Ltd. owns 100% of the capital stock of the Parent Corporation, and Sports Shinko Co., Ltd. owns 100% of the capital stock of Sports Shinko (USA) Co., Ltd.

To induce the Bank to make the Bank Loans to the Debtor, and in consideration thereof, the Parent Corporation and the Affiliates have agreed, together with the Debtor, to execute and deliver this Agreement for the benefit of the Bank.

Now, therefore, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parent Corporation, the Affiliates and the Debtor, it is agreed:

1.  The Parent Corporation and the Affiliates do hereby unconditionally and irrevocably waive their right to ask, demand, sue for, take or receive from the Debtor (and do hereby agree that the Parent Corporation and the Affiliates will not ask, demand, sue for, take or receive from the Debtor), directly or by set off or in any other manner, any payment of any principal or interest or other charges on or in respect of any loan currently existing or hereafter made by the Parent Corporation or

A 30216

EXHIBIT R

either of the Affiliates to the Debtor (hereinbelow called "affiliate loan") or negotiate, discount, sell, further encumber or otherwise dispose of any instrument evidencing any affiliate loan, until such time as the Bank Loans shall have been terminated and all principal and accrued interest on and other charges relating to the Bank Loans shall have been paid in full to the Bank.

2. The foregoing provisions to the contrary notwithstanding, the Parent Corporation and/or either of the Affiliates may receive from the Debtor, in payment of principal or interest on any affiliate loan, such amounts (and only such amounts) as the Bank may have authorized the Debtor to pay to the Parent Corporation or the Affiliates by written instruments signed by the Bank and delivered to the Debtor by the Bank from time to time.

3. Any affiliate loan shall at all times be junior and subordinate and subject in right of payment to all principal and accrued interest on the Bank Loans, now or hereafter payable by the Debtor to the Bank. In the event of (i) insolvency, bankruptcy, receivership, liquidation, reorganization, readjustment, composition or other similar proceedings relative to the Debtor or involving its creditors as such or its properties, (ii) any proceeding for the voluntary liquidation, dissolution or other winding up of the Debtor whether or not involving insolvency or bankruptcy proceedings, (iii) any assignment for the benefit of the Debtor's creditors, or (iv) any other marshalling of assets of the Debtor, then and in any such event, the Bank Loans shall first be paid in full before the Parent Corporation or either of the Affiliates shall be entitled to receive any payment or distribution of any character in respect of any affiliate loan.

4. If any payment of any character in respect of any affiliate loan shall, in violation of the terms of this Agreement, be received by the Parent Corporation or either of the Affiliates, before the Bank Loans shall have been terminated and all amounts due the Bank have been paid in full, such payment shall be held by the Parent Corporation or such Affiliate in trust for the benefit of the Bank and shall be paid over or delivered to the Bank on the Bank's demand.

5. The Parent Corporation and the Affiliates will promptly cause all executed copies of all instruments now evidencing or securing any affiliate loan to be endorsed or otherwise marked to contain a specific statement therein or thereon that the Debtor's indebtedness to

2

A 30217

the Parent Corporation or the Affiliates, and the rights of the Parent Corporation or the Affiliates with respect to any affiliate loan, are subject to the provisions of this Agreement, and the Parent Corporation and the Affiliates on the Bank's demand will provide evidence (satisfactory to the Bank) of such endorsement or other marking.

6. The Debtor will promptly cause its books and records relating to or evidencing any affiliate loan to be marked to contain a specific statement therein or thereon that the Debtor's indebtedness to the Parent Corporation or the Affiliates, and the Parent Corporation's or either Affiliate's rights with respect to any affiliate loan are subject to the provisions of this Agreement, and the Debtor on the Bank's demand will provide evidence (satisfactory to the Bank) of such endorsement or other marking.

7. Upon the Bank's demand, the Parent Corporation and the Affiliates will execute and deliver to the Bank U.C.C. "informational" Financing Statements, in form and substance acceptable to the Bank, evidencing that the Parent Corporation and the Affiliates are subject to the provisions of this Agreement.

8. All provisions herein contained shall be and remain fully effective regardless of any extension of time (and even multiple extensions of time for longer than the initial period) or other indulgences or forbearances allowed or granted by the Bank to the Debtor with respect to the Bank Loans to the Debtor, and the Parent Corporation and the Affiliates agree to any and all substitutions, exchanges or releases of the Bank's security for the Bank Loans, and the Parent Corporation and the Affiliates agree that they will not require marshalling by the Bank under any circumstances.

9. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii, United States of America.

11. This Agreement completely restates and supercedes that certain Stand-Aside and Subordination Agreement dated November 9, 1987, made by and among the Parent Corporation, the Debtor, the Bank and Sports Shinko

A 30218

3

Co., Ltd. in connection with the Bank's original $8,000,000 mortgage loan to the Debtor.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

SPORTS SHINKO (HAWAII) CO., LTD.

By _____
   Its
            "Parent Corporation"

SPORTS SHINKO CO., LTD.

By _____
   Its

SPORTS SHINKO (USA) CO., LTD.

By _____
   Its
            "Affiliates"

SPORTS SHINKO (MILILANI) CO., LTD.

By _____
   Its
            "Debtor"

BANK OF HAWAII

By _____
   Its  Vice President
                        "Bank"

4

A 30219