IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>PUKALANI GOLF CLUB, LLC, a Hawai`i limited liability company; KG MAUI DEVELOPMENT, LLC, a Hawai`i limited liability company; KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI,<br><br>        Defendants.<br>——————————————————<br>FRANKLIN K. MUKAI,<br><br>        Third-Party Plaintiff,<br><br>    vs.<br><br>SPORTS SHINKO CO., LTD., a Japan corporation, SPORTS SHINKO (HAWAII) CO., LTD., a Hawai`i corporation, SPORTS SHINKO (MILILANI) CO., LTD., a Hawai`i corporation, SPORTS SHINKO (KAUAI) CO., LTD., a Hawai`i corporation, SPORTS SHINKO (PUKALANI) CO., LTD., a Hawai`i corporation, SPORTS SHINKO RESORT HOTEL CORPORATION, a Hawai`i corporation, SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawai`i corporation, and OCEAN RESORT HOTEL CORPORATION, a Hawai`i corporation,<br><br>        Third-Party Defendants. | CIVIL NO. 04-00125 ACK/BMK<br><br>**THIRD-PARTY COUNTERCLAIM AGAINST FRANKLIN K. MUKAI, ET AL.** |

```
SPORTS SHINKO CO., LTD., a Japan)
corporation, SPORTS SHINKO      )
(HAWAII) CO., LTD., a Hawai`i   )
corporation, SPORTS SHINKO      )
(PUKALANI) CO., LTD., a Hawai`i )
corporation,                    )
                                )
     Third-Party Defendants/    )
     Counterclaimants,          )
                                )
     vs.                        )
                                )
                                )
PUKALANI GOLF CLUB, LLC, a      )
Hawai`i limited liability       )
company; KG MAUI DEVELOPMENT,   )
LLC, a Hawai`i limited liability)
company; KG HOLDINGS, LLC, a    )
Hawai`i limited liability       )
company, FRANKLIN K. MUKAI,     )
                                )
     Third-Party Counterclaim   )
     Defendants.                )
_____)
```

## THIRD-PARTY COUNTERCLAIM AGAINST FRANKLIN K. MUKAI, ET AL.

Third-Party Defendants SPORTS SHINKO CO., LTD., SPORTS SHINKO (HAWAII) CO., LTD., SPORTS SHINKO (PUKALANI) CO., LTD. (collectively, the "SS Third-Party Counterclaimants"), by and through their attorneys, Alston Hunt Floyd & Ing, hereby allege their Third-Party Counterclaim against Franklin K. Mukai ("Mukai"), *et al.* as follows:

### PARTIES

1.    Third-Party Counterclaimant Sports Shinko Co., Ltd. ("SSJ") is and was at all relevant times, a Japan corporation with its principal place of business in Japan.

2.    Third-Party Counterclaimant Sports Shinko (Hawaii) Co., Ltd. ("SSH") is and was at all relevant times a Hawaii for profit company with its principal place of business in Hawai`i.

3.    Third-Party Counterclaimant Sports Shinko (Pukalani) Co., Ltd. ("SSP") is and was at all relevant times a Hawaii for profit company with its principal place of business in Hawai`i.

4.    SSH owns and at all relevant times has owned the stock of the following subsidiaries:  Sports Shinko (Kauai) Co., Ltd., Sports Shinko (Mililani) Co., Ltd., SSP, and Sports Shinko Resort Hotel Corporation ("SSRHC").  SSRHC owns the stock of Ocean Resort Hotel Corp. and SSW.

5.    Defendant PUKALANI GOLF CLUB, LLC is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of Pukalani Golf Club, LLC are all citizens of Hawai`i.  Defendant KG MAUI DEVELOPMENT, LLC is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of KG Maui Development, LLC are all citizens of Hawai`i.  Defendants PUKALANI GOLF CLUB, LLC and KG MAUI DEVELOPMENT, LLC are collectively referred to herein as "KG MAUI."

6.    Defendant KG HOLDINGS, LLC ("KG HOLDINGS"), is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of KG Holdings are all citizens of Hawai`i.

7.   Third-Party Plaintiff/Counterclaim Defendant FRANKLIN K. MUKAI ("MUKAI") is a citizen of Hawai`i.  At all relevant times, MUKAI was an employee and/or partner of McCORRISTON MILLER MUKAI MACKINNON LLP, a Limited Liability Law Partnership ("M4"), an officer and/or director of SSH and the Third-Party Counterclaimants, and an attorney and agent for SSP. At all relevant times, MUKAI acted directly and through agents of M4.

**JURISDICTION**

8.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1367, and under principles of supplemental jurisdiction.

9.   Venue is appropriate in this Court under 28 U.S.C. § 1391 because most of the events giving rise to the SS Third-Party Counterclaimants' claims occurred in this district.

**GENERAL ALLEGATIONS**

10.  SSJ and SSH are and at all relevant times were creditors of SSP.

11.  At all relevant times, SATOSHI KINOSHITA ("SATOSHI"), TAKESHI KINOSHITA ("TAKESHI") and TOSHIO KINOSHITA ("TOSHIO")(collectively, the "Kinoshitas"), and TAKUYA TSUJIMOTO ("TSUJIMOTO"), YASUO NISHIDA ("NISHIDA"), TSUGIO FUKUDA ("FUKUDA") and MUKAI (the Kinoshitas, TSUJIMOTO, NISHIDA, FUKUDA and MUKAI, are hereinafter collectively referred to as "Insiders") were officers and/or directors of SSP.

12.  In 1988, SSP acquired real and personal properties, which included the Pukalani Country Club and adjoining development lands (collectively, "Pukalani Properties").

13.  Among other things, MUKAI assisted and advised SSP in managing, marketing, and selling the Pukalani Properties.

14.  At all relevant times, SSP was insolvent, and its debt exceeded the fair market value of its assets.

## THE RCC'S ATTEMPTS TO COLLECT ON DEBT

15.  In the late 1980's and early 1990's, SSJ, (the ultimate parent corporation of SSP, SSH, SSK, SSM, SSRHC and SSW, and Plaintiff in two of the consolidated cases) established a number of overseas subsidiaries.  SSJ borrowed hundreds of millions of dollars from Japan-based lenders.  SSJ in turn loaned those funds to its overseas subsidiaries, including SS USA, which loaned the funds to local subsidiaries, including SSP.

16.  In the late 1990's a quasi-governmental Japan entity known as the Resolution and Collection Corporation (the "RCC") received an assignment of the majority of SSJ's debt and became SSJ's major creditor.  The RCC was charged with collecting non-performing loans assigned to it.

17.  The RCC engaged SSJ in extended negotiations regarding repayment.  SSJ approached the RCC with repayment proposals that included sales proceeds of assets in Hawai`i and elsewhere, including the Pukalani Properties.

18.  In or about May, 2000, the RCC began legal actions to collect on debt that was secured by SSJ's property and assets in Japan.  The RCC continued to make demands for repayment and SSJ continued to make repayment proposals involving Hawai`i assets.  In May 2000, SSJ (through TOSHIO) represented that the Pukalani Country Club was worth $9 million to RCC.

19.  In response to the RCC's actions, Toshio Kinoshita and other Insiders formulated a plan to transfer assets held by SSP and SSJ's other subsidiaries in Hawai`i outside the reach of the RCC and other creditors.  The plan entailed, among other things, transferring ownership and/or management rights over SSP's assets to third party that was to be secretly controlled by the Insiders.

**RETAINING MANAGEMENT OVER SSP**

20.  With MUKAI's assistance, in or about August, 2000, the Insiders incorporated a management company that became known as Resort Management Services (Hawai`i), Inc. ("RMS").

21.  SATOSHI provided NISHIDA, who was then an officer of SSH and certain SSH subsidiaries, and a former officer of SSP, with the funds to purchase RMS's stock.  NISHIDA ostensibly became the sole director, shareholder, and president of RMS in September, 2000.

22.  Contemporaneously, SATOSHI signed exclusive real estate brokerage listing agreements for several of SSJ's subsidiaries in Hawai`i, including the Pukalani Properties.

Pursuant to these agreements, the real estate broker (the "Broker") began to market these properties for sale.

23.   Defendant MUKAI or some acting on his behalf and under his control drafted a stock option agreement (the "Option"), pursuant to which, NISHIDA, as the sole shareholder of RMS, granted SATOSHI, TAKESHI and Toshiya Kinoshita (the sons of TOSHIO) the right to purchase all of the stock of RMS for $1,500.00.

24.   In or about October, 2000, SATOSHI, TAKESHI, and NISHIDA executed the Option.

25.   NISHIDA was only a strawman for the Kinoshitas, and he operated RMS for their benefit based upon the Option.

26.   The Insiders, including specifically MUKAI, concealed the Option and the Kinoshita's interest in RMS from the RCC, Sports Shinko's lenders and creditors, (and later, the Bankruptcy Trustee for SSJ).

27.   In or about September, 2000, the Insiders, including specifically MUKAI prepared and implemented agreements under which SSP, and other Hawai`i-based subsidiaries of SSH for which Insiders served as officers and/or directors (collectively the "Sister Companies"), to enter into management agreements with RMS (the "Management Agreements").

28.   Pursuant to the Management Agreements, RMS agreed to manage properties owned by SSP and the Sister Companies. Among other things, the Management Agreements required SSP and

the Sister Companies to pay management fees, employee salaries, and other expenses to RMS, and the payment of substantial termination fees if the managed properties were transferred without RMS' consent and the transferee would not assume the Management Agreements (the "Termination Fees"). The Termination Fees totaled $3.5 million.

29. No present and reasonably equivalent value was received by SSP or the Sister Companies in exchange for the Management Agreements.

30. Insiders intended that these Management Contracts would impair the value of the assets of SSP and the Sister Companies, and appear to make it more difficult for their creditors and SS-Japan's creditors to seek any recovery from those assets and/or to transfer value to the Kinoshita's through their secret control of RMS.

31. Defendant MUKAI knew that the Management Agreements and the Option were intended to transfer assets of SSP and the Sister Companies outside the reach of their respective pre-existing creditors (including SSJ) for the benefit of the Insiders, without any present and reasonably equivalent value passing to SSP or Contracting Companies.

**MAINTAINING OWNERSHIP OF SSP**

32. In early 2001, the RCC threatened to put SSJ into legal reorganization proceedings in Japan. The RCC also

expressed interest in compelling SSJ to sell its overseas assets and the assets of SSJ's direct and indirect subsidiaries.

33. In late November, 2001, TOSHIO and other Insiders created a plan to cause RMS, or another entity owned and/or controlled by the Kinoshitas, to purchase the stock or assets of SSP (the "Plan").

34. SATOSHI informed MUKAI of the Plan.

35. MUKAI assisted TOSHIO and the Insiders with taking steps to analyze and implement the Plan, even though they were aware that SSP was insolvent and the RCC was pursuing legal action against SSJ's assets.

36. The Insiders, including MUKAI, caused Grant Thornton, LLP to analyze the tax consequences of the transfers proposed under the Plan.

37. With the assistance of MUKAI, the Insiders marketed SSP's assets in 2000 and 2001. They received and rejected a number of offers through December, 2001.

38. In addition, MUKAI searched for buyers for the Hawai`i properties owned by SSP and the Sister Companies.

39. On December 4, 2001, SATOSHI received a letter of interest to purchase all of the assets of SSP and the Sister Companies from Defendant KG Holdings, LLC ("KG"). KG's interest was instigated by MUKAI, who had a social and professional relationship with insiders of KG.

40.   After it received KG's December 4, 2001 letter, SSP, through SATOSHI, instructed the Broker to cease all marketing efforts.

41.   Despite the listing Agreements, the Insiders then began exclusive dealings with KG without involving the Broker. KG's representatives flew to Japan to meet with TOSHIO and SATOSHI, among others.

42.   The Insiders rejected more lucrative purchase offers provided by the Broker in order to further their plan to retain control and ownership of SSP's assets, and to hinder or delay SSJ from being able to collect on its loans to SSP, which, in turn, would hinder SSJ's creditors, including the RCC.

43.   In early January, 2002, the RCC asked TOSHIO to voluntarily place SSJ into reorganization in Japan.  On or about January 15, 2002, TOSHIO met with RCC to discuss a plan for repayment of SSJ's debts.  The RCC rejected the repayment proposal and began steps to force SSJ into bankruptcy in Japan.

**PURCHASE AND SALE AGREEMENT**

44.   On or about January 15, 2002, SSP and Defendant KG HOLDINGS and its nominees (KG MAUI), with the assistance of MUKAI, entered into an agreement ("PSA") to buy the assets of SSP and the Sister Companies.  The contract price was below the fair market value of the assets to be sold and substantially less than the aggregate value of competing offers from qualified buyers that the Insiders had previously rejected.

45.   At all relevant times, the Insiders (including MUKAI), KG MAUI, and KG HOLDINGS knew or should have known that the amount to be paid by KG MAUI for SSP's assets was significantly less than their fair market value, and that SSP would not, and did not, receive reasonably equivalent value for its assets.

46.   At all relevant times, Insiders, KG MAUI, and KG HOLDINGS each knew or reasonably should have known that SSP was insolvent.

47.   By selling SSP's assets to KG MAUI on the terms negotiated with KG HOLDINGS, the INSIDERS, with the assistance of MUKAI, realized substantially less than if they had sold to others at arm's length.  As a result, SSP received less than it should have to repay SSJ.

48.   KG MAUI refused to assume the Management Agreement concerning the Pukalani Properties, thereby triggering SSP's obligation to pay the Termination Fees to RMS.

49.   On or about January 28, 2002, the RCC initiated bankruptcy proceedings against SSJ in the District Court in Osaka, Japan.

50.   On or about January 30, 2002, in partial payment of the Termination Fees, SSP, through SATOSHI, executed a deed for residential real property located at Makawao, Maui, at TMK (2) 3-2-020-034 (the "Pukalani Residence") to RMS.  SSP did not

receive present and reasonably equivalent value in exchange for the transfer of the Pukalani Residence to RMS.

51.  On or about February 4, 2002, the District Court for Osaka, Japan appointed a Trustee and Deputy Trustees to manage SSJ's domestic and overseas assets.

52.  In early March, 2002, the Deputy Trustee in bankruptcy for SSJ and his assistants met in Hawai`i with SATOSHI, Mukai and others, who failed to disclose all material information about the Plan, the transactions described above, and the Insiders' efforts to prevent SSJ and its creditors from realizing the full value of SSP's assets.

## CLAIMS FOR RELIEF

### COUNT I:  Haw. Rev. Stat. § 651C-5(a)
### (KG HOLDINGS, KG MAUI)

53.  The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in preceding paragraphs, as though fully set forth herein.

54.  The transfer of SSP's assets to Defendants KG MAUI was fraudulent under Haw. Rev. Stat. § 651C-5(a) because no reasonably equivalent value was received by SSP, which was either insolvent at the time of the transfer or rendered insolvent by the transfer.

55. As a result of the transfer and other fraudulent actions, creditors of SSP, including SSJ and SSH were damaged and SSJ and SSH are entitled to damages and all other appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

### COUNT II:  Haw. Rev. Stat. § 651C-4
### (KG HOLDINGS, KG MAUI)

56. SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

57. SSP's transfer of the Pukalani Properties to KG MAUI was fraudulent because the transfer was made with actual intent to hinder, delay, or defraud one or more of SSP's creditors.

58. The actual intent to hinder, delay or defraud is evidenced by, among other things, the following facts:

        a.    The transfer to KG MAUI involved substantially all of SSP's assets;

        b.    SSP was insolvent or became insolvent as a result of the transfer;

        c.    Insiders concealed the transfer from the Broker for SSP's properties;

d.   Insiders destroyed documents and concealed information about the transfer from SSP's successor management and the Bankruptcy Trustee for SSJ;

e.   Insiders concealed their interest in RMS and the proceeds from the management contracts, which encumbered SSP's assets; and

f.   The price paid for SSP's assets was below the fair market value of those assets.

59.  As a result of this fraudulent transfer, creditors of SSP, including SSJ and SSH, were damaged and SSJ and SSH are entitled to all other appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

**COUNT III:  Aiding and Abetting/Conspiracy to Violate Haw. Rev. Stat. ch. 651C (KG HOLDINGS, KG MAUI)**

60.  The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

61.  The acts of MUKAI, KG HOLDINGS, and/or KG MAUI caused and/or enabled the transfer of SSP's assets to KG MAUI and an array of assets to RMS in violation of Haw. Rev. Stat. ch. 651C.

62.  SATOSHI, TAKESHI, TOSHIYA KINOSHITA, and NISHIDA, with the help of the MUKAI and his agents, entered into

agreements to fraudulently convey assets of SSP to Insiders in violation of Haw. Rev. Stat. ch. 651C.

63. MUKAI, KG HOLDINGS, and KG MAUI knew or should have known that the Insiders were violating and/or intending to cause SSP to violate Haw. Rev. Stat. ch. 651C. MUKAI, KG HOLDINGS, and KG MAUI knowingly gave substantial assistance or encouragement to the Insiders in connection with their violations of Haw. Rev. Stat. ch. 651C.

64. The Defendants' conduct injured SSP's creditors, including SSJ and SSH, in an amount to be determined at trial.

### COUNT IV: Breach of Fiduciary Duty (MUKAI)

65. The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

66. At all relevant times, MUKAI was an attorney, officer and/or director of the SS Third-Party Counterclaimants. Upon the insolvency of SSP, MUKAI owed fiduciary duties, including a duty of care and a duty of loyalty, to creditors of SSP, including SSJ and SSH, and to the SS Third-Party Counterclaimants, to exercise his judgment in an informed, good faith effort to maximize the value of, and sales proceeds from,

SSP's assets for the benefit of SSJ, SSH and SSP's other creditors, and for SSP.

67.   MUKAI, alone and in concert with others, breached his duties to SSJ, SSH and SSP by, *inter alia*, purposefully allowing Insiders to engage in self-dealing transactions, neglecting and abandoning corporate opportunities to obtain more value for SSP's assets for the benefit of creditors, and by conspiring to, causing, or assisting the fraudulent conveyance of SSP's assets in violation of Haw. Rev. Stat. ch. 651C.

68.   SSJ, SSH, and SSP were proximately damaged by such breaches in an amount to be determined at trial.

### Count V:  Aiding and Abetting Breach of/ Conspiracy to Breach Fiduciary Duties
### (MUKAI, KG MAUI, KG HOLDINGS)

69.   The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

70.   Upon the insolvency of SSP, the Insiders including MUKAI, owed fiduciary duties to protect the interests of SSP and the creditors of SSP, including SSJ and SSH.

71.   The Insiders collaborated to prepare, execute and implement agreements that breached those fiduciary duties whereby, *inter alia*, Insiders engaged in self-dealing

transactions and fraudulently conveyed SSP's assets, and such conduct frustrated the rights of SSP and SSP's creditors, including SSJ and SSH.

72. MUKAI knew that the conduct of his fellow Insiders constituted a breach of their fiduciary duties, and gave substantial assistance and encouragement to those Insiders in such conduct.

73. MUKAI caused and/or enabled those Insiders to breach their fiduciary duties, and such acts were in furtherance of their conspiracy.

74. MUKAI, KG MAUI, and KG HOLDINGS knew or reasonably should have known of the Insiders' fiduciary duties to SSJ, SSH and SSP.

75. MUKAI, KG MAUI and KG HOLDINGS affirmatively and knowingly agreed to aid Insiders in breaching their fiduciary duties to SSH, SSJ and SSP, by assisting them in, *inter alia,* self-dealing transactions and fraudulently transferring SSP's assets. MUKAI, KG MAUI and KG HOLDINGS knew these actions would frustrate the rights of SSP and SSP's creditors, including SSJ and SSH.

76.   MUKAI knowingly participated and provided substantial assistance and encouragement to the other Insiders in breaching their fiduciary duties.

77.   SSJ, SSH and SSP were proximately damaged by such actions and omissions in an amount to be determined at trial.

### Count VI:   Deepening Insolvency
### (MUKAI)

78.   Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

79.   MUKAI engaged in conduct that he knew would aggravate SSP's insolvency and fraudulently prolong its life, including assisting Insiders in rejecting offers to purchase the Pukalani Properties for fair market value or greater, and in accepting the offer of KG HOLDINGS, whose offer was significantly less than fair market value and less than offers previously made by other qualified buyers.

80.   By rejecting these offers, Insiders, with the assistance of MUKAI, fraudulently prolonged the life of SSP and further deepened its insolvency.

81.   MUKAI fraudulently prolonged SSP's life in order to hinder or prevent SSJ, SSH and SSP from collecting on its debt.

82.   MUKAI's actions and omissions were performed in bad faith and/or with the intent to harm SSP's creditors.

83.   SSJ and SSH were proximately damaged by such actions and omissions in an amount to be determined at trial.

### Count VII:  Attorneys' Fees (Third-Party Litigation exception) (MUKAI, KG HOLDINGS, KG MAUI)

84.   SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the paragraphs above, as though fully set forth herein.

85.   The wrongful acts of Defendants, and those acting under their direction and control, caused SSJ, SSH, and SSP to incur attorneys' fees and expenses to protect their rights.

### COUNT VIII:  Rescission (KG MAUI)

86.   Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

87.   KG MAUI had notice of limitations of Insiders' authority to transfer the Pukalani Properties, namely, that Insiders owed a fiduciary duty to SSJ, SSP, and SSH, and were

obligated to exercise judgment in an informed, good faith effort to maximize SSP's long-term wealth creating capacity.

88.   KG MAUI knew or should have known that Insiders were acting improperly by causing SSP to reject offers to purchase SSP's assets for at or above fair market value, and to accept the significantly lower offer of KG MAUI.

89.   KG MAUI had reason to believe that Insiders were acting for their own benefit.

90.   The sale of SSP's assets to KG MAUI was suspicious on its face given the speed of the transaction and its terms.

91.   Circumstances indicated Insiders were acting in fraud of SSP's creditors.

92.   KG MAUI knew or should have known that Insiders were not acting for the benefit of SSP's creditors.

93.   SSJ, SSH, and SSP are entitled to rescission of the transfer of the Pukalani Properties.

### COUNT IX:  Creditor Fraud
### (MUKAI)

94.   The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

95.   At all relevant times, MUKAI knew or should have known SSP was either insolvent or would be rendered insolvent by the transfer of SSP's assets.

96.  At all relevant times, MUKAI knew or should have known SSP was not receiving reasonably equivalent value for SSP's assets.

97.  MUKAI knew SSJ and SSH were creditors of SSP and/or had claims on SSP's assets.

98.  MUKAI intentionally or recklessly participated in Insiders' unlawful conduct to hinder, delay, or defraud creditors of SSP, including SSJ and SSH.

99.  As a result of MUKAI's acts and omissions, SSJ and SSH were injured in an amount to be determined at trial.

### COUNT X:  Shareholder Claims
### (MUKAI)

100.  The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

101.  SSH is and was the sole shareholder for SSP when the Pukalani Residence and Pukalani Property were transferred to RMS and/or KG MAUI.

102.  At all relevant times, MUKAI and the Insiders acted on behalf of SSP.

103.  MUKAI and the Insiders caused SSP to transfer substantially all its assets to KG MAUI for substantially less than their market value.

104.  SSP's transfer of all its income producing, valuable assets caused injury to SSH, SSP's shareholder, including without limitation, making SSP's stock worthless, causing SSP to be unable to pay dividends, and the loss of any ability to sell SSP's stock to any purchaser.

105.  As a result of MUKAI's acts and omissions, SSH was injured in an amount to be determined at trial.

### Punitive Damages
### (MUKAI, KG HOLDINGS, KG MAUI)

106. The SS Third-Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

107.  MUKAI, KG HOLDINGS and/or KG MAUI has knowingly, willfully, wantonly, and in reckless disregard of their civil obligations, caused, conspired to, and/or substantially assisted or encouraged the other to, fraudulent convey assets of, and harm SSJ, SSH and SSP.

108.  SSJ, SSH and SSP are each entitled to an award of punitive damages against each of these Defendants.

WHEREFORE, Third Party Counterclaimants request that the Court:

A.    Declare that SSP's transfer of the Pukalani Properties to Defendants KG HOLDINGS and/or KG MAUI was fraudulent as to SSJ and SSH;

B.    Avoid the foregoing transfers to the extent necessary to satisfy Third Party Counterclaimants' claims and/or grant SSJ and SSH any other relief appropriate under Haw. Rev. Stat. § 651C-7(a);

C.    Impose a constructive trust on all assets transferred by SSP to KG HOLDINGS and/or KG MAUI, and all profits earned thereon;

D.    Order an accounting of all revenues received and expenses paid by KG HOLDINGS and/or KG MAUI in connection with the Pukalani Properties and the Pukalani Residence;

F.    Award SSJ, SSH and SSP general, special, and punitive damages commensurate with the proof at trial; and

G.    Award SSJ, SSH and SSP their attorneys' fees and costs, and such other and further relief as may be just and proper.

DATED:     Honolulu, Hawai`i, January 13, 2006.

PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiff
and Third-Party Defendants,
the SS Entities