FROM
2002年 2月14日(木)11:04/蕾11:03/文書番号4203676574 P 1



# Makai Properties
### Real Estate Sales & Development
Bob Keown, Ltd.

Mr. Toshio Kinoshita, President
Mr. Tsugio Fukuda , Director
International Business Department
Mr. Satoshi Kinoshita , Executive Vice President
Sports Shinko Hawaii
Sports Shinko Co. Ltd.
3-7 Kanda Ogawamachi
Chiyoda-ku . Tokyo 101 Japan
Fax 011 81 03 5259-1530
    808-931-4396

Re: $10,000,000.00 cash offer for Kiahuna Golf Properties

Dear Mr. Kinoshita and Mr. Fukuda,


Happy New Year !

   I called Mr. Douglas Pothull and Mr. Satoshi Kinoshita over the Christmas Holiday and received no reply. So I am faxing you directly.

   I do not know if the property is still listed with Colliers. If so please accept my apologies for not presenting this offer to them. The property does not show up as listed in the Kauai MLS.

   Mr. Fukuda had responded to my offer for the 19 acre parcel several years ago, so I am using the same fax number in Japan.

   I have also used a standard Realtor contract form for the offer and understand you might desire another contract form.

   Major points:
   1. $10,000,000.00 U.S. cash
   2. Contingencies:
       a. Extension of the 300 housing unit requirement until 1/1/2013 from the County of Kauai.
       b. 120 day due diligence period with full disclosure from Seller

P.O. Box 905, 1941 Poipu Road
Koloa, Kauai, Hawaii 96756-0905
Email: makai01@aloha.net  Web: www.makaiproperties.com
(808) 742-7561  Fax (808) 742-7685

**EXHIBIT 10**

008 1381
S 00578

3. Includes all properties plus percentage interest in Sewer Plant
4. Includes all improvements and equipment on property as of 12/31/01
5. Commission to be paid by Seller of 6% of sale price.
6. Closing 6/31/02 or sooner at Buyers option

Thank you very much,

*Terry P. Ka——*

Terry P. Kamen
Realtor Makai Properties
Fax      808-742-7685
Voice    808-639-0071

008 1382
S 00579



008 1383
S 00580



**DEPOSIT RECEIPT OFFER AND ACCEPTANCE (DROA)**
**Hawaii Association of Realtors® Standard Form**
**Release 5/01A**

Hawaii Association of REALTORS®

Disclaimer: This form is available for use by the entire real estate industry. The use of this form is not intended to identify the real estate licensee as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

Reviewed by: _____ who hereby certifies that this is a true imprint of the HAR Standard Form.
Principal Broker/Broker-in-Charge

Reference Date: 1/1/02     Price:     10,000,000.00 ("C-1")

Closing Date: 6/30/02     ("C-6")

Property Reference: Kiahuna Golf Properties ( see C-2 ) Koloa Hawaii USA 96756
                                    Address

Tax Map Key: Div. _____ /Zone _____ /Sec. _____ /Plat _____ /Parcel _____ /CPR _____ (if applicable).

CONTRACT: This is more than a receipt for money. It is a legally binding contract. Read it carefully. Handwritten or typed provisions herein shall supersede any printed provisions if there is a conflict. FILL IN ALL BLANKS. WRITE "NA" IF NOT APPLICABLE. ITEMS WITH CHECK-OFF BOXES ARE OPTIONAL. ALL OTHERS ARE STANDARD PROVISIONS.

### SECTION A: AGENCY DISCLOSURE

A-1 AGENCY. Prior to preparing any contract, Hawaii law requires real estate licensees to disclose orally or in writing to Seller and/or Buyer whom the licensee represents. The licensee could be a:
(a) **Seller's Agent.** Represents Seller only, unless a disclosed dual agency exists. Seller's agent owes the highest duties to Seller, including confidentiality, loyalty, and utmost care.
(b) **Buyer's Agent.** Represents Buyer only, unless a disclosed dual agency exists. Buyer's agent owes the highest duties to Buyer, including confidentiality, loyalty, and utmost care.
(c) **Seller's Subagent.** All licensees represent Seller only. There will be no subagency unless agreed to in writing as a special term in the DROA.
(d) **Dual Agent.** Represents both Seller and Buyer as clients. To lessen the conflict, the dual agent plays a neutral role in negotiations and must not advance the interest of one party ahead of the other. It commonly arises when other licensees in the listing company have Buyer clients looking for types of property similar to Seller's. Both Seller and Buyer need to sign a written agreement describing the role of the dual agent. The dual agent acts as a facilitator to bring Seller and Buyer to a common ground of understanding in the negotiations.

CUSTOMER. Seller's Agent can also assist Buyer, as a customer. As a customer, Buyer is not represented by Seller's Agent. Seller's Agent can assist Buyer in writing the DROA, can present the DROA to Seller, and can report back any acceptance or request for changes to the DROA.

A-2 DISCLOSURE. Seller is represented by _____ ("Company").
The company representing Seller is [ ] is not [ ] a member of the National Association of REALTORS® which subscribes to a strict Code of Ethics.
The Buyer:
[x] is represented by Makai Properties _____ ("Company").
The company representing Buyer is [x] is not [ ] a member of the National Association of REALTORS® which subscribes to a strict Code of Ethics.
[ ] is a customer of _____ ("Company").
[ ] is not represented by a real estate licensee.

Oral or written disclosure relating to agency was provided before the signing of this Offer.

_____ (Buyer's Initials)     ★ _____ (Seller's Initials)

Buyer and Seller are aware that the National Association of REALTORS® holds its members accountable for their actions through a strict Professional Code of Ethics, which includes a grievance system to address complaints. Non-members are not necessarily held to the same standards as members, nor are they required to participate in the grievance system.

DL  01/01/02
BUYER'S INITIALS & DATE

★ SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®
Deposit Receipt Offer and Acceptance
RR201 Rev 6/01

Page 1 of 12

Prepared by: Terry Kamen, R     Co.: Makai Properties     S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 8/01, 408-047-2107, www.formerus.com

008 1384
S 00581

## SECTION B: DEPOSIT RECEIPT

Received from David Resnick , the "Buyer," the sum of $ 100,000.00
in the form of check as an initial deposit on account of this Offer. Receipt is
acknowledged by _____
(signature of Broker or Salesperson)
whose telephone numbers are: Bus 808-742-7561   Res 808-639-0071   Fax 808-742-7685
Firm name and address Makai Properties P.O. Box 905 Koloa Hawaii 96756

[X] B-1 The initial deposit check remains uncashed and it will be retained by the Broker assisting Buyer and will be deposited with Escrow or in a trust fund account by the next business day after the Acceptance Date.
INTEREST ON DEPOSIT FUNDS (Choose B-2 OR B-3)

[X] B-2 Buyer to Earn Interest. The parties instruct Escrow to place Buyer's deposit(s) into an interest-bearing account with all interest to be credited to Buyer at closing. Buyer will pay any processing fee required by Escrow and all costs of setting up, maintaining and closing the account. Buyer understands that such fees/costs may exceed the interest earned.

[NA] B-3 Buyer not to Earn Interest. Buyer hereby waives the right to place Buyer's deposits in an interest-bearing account. Buyer understands any interest earned on such deposits shall belong to Escrow.

## SECTION C: ADDENDA AND OFFER

ADDENDA. The following addenda, if checked, are attached to and made a part of this DROA.
[ ] Agreement of Sale                              [ ] Lead-Based Paint            [ ] Residential Leasehold Property
[ ] Agreement to Occupy Prior to Close of Escrow   [ ] Plain Language                   (required if property is Leasehold)
[ ] Existing "As Is" Condition                     [ ] Purchase Money Mortgage     [ ] Standard Oceanfront Property
[ ] FHA Financing/Real Estate Certification        [ ] Rental Agreement            [ ] VA Financing

[ ] Other _____     [ ] Other _____
[ ] Other _____     [ ] Other _____
[ ] Other _____     [ ] Other _____
[ ] Other _____     [ ] Other _____

OFFER TO BUY. Buyer offers to buy the Property described below on the terms and conditions contained herein, acknowledges receipt of a copy of the Offer, and agrees that this Offer shall be binding on Buyer if accepted by Seller before
January 7 , 2002 , 5:00 [X] AM/PM

C-1 Purchase price for the Property is $ 10,000,000.00 Ten million U.S. Dollars, which shall be paid as follows:
$ 100,000.00 Initial deposit in cash from Section B above.
$ _____ Additional cash deposit, if any, paid into Escrow on or before _____
$ 9,900,000.00 Balance of down payment (or balance of purchase price if all cash) paid into Escrow before closing.

$10,000,000.00 TOTAL CASH FUNDS FROM BUYER (exclusive of closing costs).

$ _____ By way of _____

$ _____

$ 10,000,000.00 TOTAL PURCHASE PRICE

DR 01/01/02
BUYER'S INITIALS & DATE
© Hawaii Association of REALTORS®

Page 2 of 12

★ SELLER'S INITIALS & DATE
RR201 Rev 6/01

Prepared by: Terry Kamen, R   Co.: Makai Properties   S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 8/01, 408-947-2107, www.formsrus.com

008 1385
S 00582

**PROPERTY**

C-2 Description: Tax Map Key: Div.____/Zone____/Sec.____/Plat____/Parcel____/CPR____(If applicable).

All of that fee simple  Property situated at: Kiahuna Golf Properties
leasehold/fee simple
Kiahuna Plantation Drive, Poipu Kauai Hawaii
Hawaii, described as follows: Parcels: 4-2-8-14-7,8,28,31,32,33,34,35,36 Parcel 4-2-8-15-77
All improvements thereon: 18 hole golf course, pro shop, pro garage, restaurant and bathroom buildings, percentage interest in the sewer treatment plant

C-3 Sale Includes: All built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, attached carpeting, and the following items if checked: Air Conditioner [x]; Ceiling Fan [x]; Chandelier [ ]; Dishwasher [x]; Disposal [x]; Dryer [x]; Existing Furnishings as per attached Inventory [x]; Existing Window Coverings [x]; Microwave [x]; Pool Equipment [ ]; Range [x]; Refrigerator [x]; Smoke/Heat Detectors [x]; Solar Heating System [ ]; TV Antenna [ ]; TV Cable Outlet [x]; Washer [ ]; and All furnishings, inventory, equipment that is presently owned by Seller located on property as of 12/31/01. Including all golf equipment: carts, clubs etc.

C-4 Specifically Excluded:
None

C-5 **CLOSING**
For purposes of this DROA, closing shall be the date when all appropriate conveyance documents are recorded. Buyer and Seller agree to promptly execute appropriate or customary documents when requested by Escrow to do so.

C-6 The "Scheduled Closing Date" shall be on or before 6/30/02

Any Change to the Scheduled Closing Date Shall Be Handled as Follows: (Choose C-7 OR C-8)

NA ]C-7 Extensions. There is no automatic right to extend. If, for reasons beyond a Buyer's or Seller's control, a party cannot perform the obligation to close by the Scheduled Closing Date, then such party may extend the Scheduled Closing Date up to NA days by delivery of written notice to Escrow and the other party to this DROA prior to the Scheduled Closing Date. Thereafter, time shall be of the essence and if a party fails to perform by the extended Scheduled Closing Date, such party shall be considered in default and the Default Provision shall apply. The extended Scheduled Closing Date may not be further extended unless both Buyer and Seller so agree in writing. This provision relates only to the extension of the Scheduled Closing Date.

x ]C-8 Time is of the essence and the Scheduled Closing Date may not be extended unless both Buyer and Seller so agree in writing.

C-9 Escrow. This transaction shall be escrowed by: First Hawaii Title ("Escrow")

C-10 Prorations and Closing Adjustments. At closing, Escrow shall prorate the following, if applicable, as of the date of closing: real property tax, lease rents, interest on assumed obligations, mortgage and other insurance premiums, maintenance fees, tenant rents, and all others_____. When applicable, Escrow shall charge to Seller and credit to Buyer the amount of any tenants security deposit.

C-11 Closing Costs. The following are customary closing costs and are not intended to be an all-inclusive list. Escrow may charge the appropriate party other closing costs as directed by the parties.

Charge to Buyer, if applicable:
40% of the premium for standard coverage title insurance and any additional costs relating to the issuance of extended coverage policy (including a lender's policy)
Cost of drafting of agreement of sale or mortgage and note
Cost of obtaining Buyer's consents
Buyer's notary fees
All recording fees except documents to clear Seller's title
50% of Escrow's fee
Condominium ownership transfer fees
FHA or VA discount points and any mortgage fees
Hawaii Hurricane Relief Fund (special mortgage recording fee)
Hawaii General Excise Tax

Charge to Seller, if applicable:
60% of the premium for standard coverage title insurance
Cost of drafting of conveyance documents and bills of sale
Cost of obtaining Seller's consents
Seller's notary fees
Conveyance tax
50% of Escrow's fees
Cost of required staking or survey
FHA or VA discount points and other applicable charges
Recording fees to clear Sellers Title
FIRPTA (Federal withholding tax)
HARPTA (State withholding tax)
Hawaii General Excise Tax

DR 01/01/02
BUYER'S INITIALS & DATE
© Hawaii Association of REALTORS®

Page 3 of 12

SELLER'S INITIALS & DATE
RR201 Rev 6/01

Prepared by: Terry Kamen, R   Co: Makai Properties   S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 6/01, 406-947-2107, www.formsus.com



008 1386
S 00583

**ASSESSMENTS**
For purposes of Paragraphs C-12, C-13, and C-14, an assessment is defined as any obligation (not including prorations in C-10) for payment made against the Property which has been duly AUTHORIZED by a homeowners association, a governmental entity or any other organization or entity which may do so. Assessments, if any, shall be charged as follows:

C-12  Any lump sum assessments against the Property authorized as of the Acceptance Date shall be paid by Seller [xxx] or assumed by Buyer [ ].
Exceptions, if any: _____

C-13  Any assessments against the Property authorized as of the Acceptance Date which are being paid in installments shall be paid in full by Seller [xx] or pro-rated by Escrow as of the date of closing [ ].
Exceptions, if any: _____

C-14  If a new assessment is authorized against the Property between the Acceptance Date and the Scheduled Closing Date, such assessment shall be paid as Buyer and Seller shall agree, and if Buyer and Seller cannot reach an agreement within five (5) days of both parties being aware of the new assessment, either party may terminate this DROA and the Termination Provision shall apply.

**OTHER CLOSING MATTERS**

C-15  **Risk of Loss.** Risk of loss passes to Buyer upon closing or possession, whichever occurs sooner.

C-16  **Consents.** The obligations of Buyer or Seller hereunder may be conditioned upon obtaining consents of vendors, existing mortgagees, lessors and/or condominium, co-op or other such associations. Buyer or Seller agree to cooperate and take all reasonable action to obtain such consents.

C-17  **Possession.** Seller agrees to give Buyer possession at closing on xxxx

C-18  **Keys to the Property.** Seller, at Seller's sole cost and expense, shall provide Buyer at closing with all existing, but at least one set of functioning keys (entry, interior, mail box, pool, security, parking area, and any garage door opener). Buyer shall pay all deposits which may be required for any of these items. Unless Buyer and Seller agree otherwise, all keys and garage door opener controls will be released to Buyer only after Escrow has verbally notified Seller or Seller's Broker that the closing has occurred.

C-19  **Tenancy and Vesting.** Title shall vest in Buyer(s) as follows: (Insert full legal name(s) and marital status for title documents)
to be determined in escrow _____

Tenancy: to be determined in escrow
[ ] Tenancy to be determined. If Buyer has not yet determined the vesting and/or tenancy, Buyer shall provide Escrow in writing with the selected names and tenancy within fifteen (15) days after the Acceptance Date.

**CONTINGENCY PROCEDURES AND TERMINATION PROVISIONS**

C-20  **Contingencies.** Buyer's obligation to buy and Seller's obligation to sell the Property may be subject in this DROA to satisfaction of one or more conditions (each called a "Contingency"). As used in this DROA, the term "Benefited Party" shall mean (a) Buyer, as to each Contingency which must be satisfied before Buyer is required to close on the purchase of the Property from Seller; and (b) Seller, as to each Contingency which must be satisfied before Seller is required to close on the sale of the Property to Buyer. If a Contingency is not satisfied within the specified time period for meeting such Contingency ("Contingency Period"), the Benefited Party may elect (a) to terminate this DROA and Paragraph C-21 ("Termination Provision") shall apply; or (b) to waive the Contingency. If the Benefited Party wishes to terminate this DROA because a Contingency for that parties benefit has not been satisfied, the Benefited Party must deliver to Escrow a written notice terminating this DROA prior to the expiration of the Contingency Period or such other termination period which may be set forth in a specific contingency in this DROA. If the Benefited Party fails to deliver the written notice to Escrow within such time period, the Contingency shall be deemed to be waived. Each party understands the requirement to act upon each Contingency according to the strict deadlines described herein.

C-21  **Termination Provision.** If a Benefited Party elects to terminate this DROA because a Contingency has not been satisfied then: (a) Buyer or Seller shall promptly execute all cancellation documents requested by Escrow; and (b) Escrow shall return to Buyer all deposits previously made, less the amount of any escrow expenses or fees chargeable to Buyer. Thereafter, neither Buyer nor Seller shall have any further rights or obligations under this DROA. This Provision is subject to the special provisions for Financing Contingencies set forth in Paragraphs C-24 to C-27. Any termination shall be in writing and delivered to Escrow to be effective.

DK 01/01/02
BUYER'S INITIAL & DATE
©Hawaii Association of REALTORS®                Page 4 of 12                SELLER'S INITIAL & DATE
                                                                           RR201 Rev.5/01
Prepared by: Terry Kamen, R          Co.: Makai Properties                         S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 8/01; 400-847-2107; www.formsrus.com



008 1387
S 00584

**CONTINGENCY FOR CASH FUNDS** (Choose C-22 OR C-23)

NA  C-22  **No Contingency for Obtaining "Cash Funds."** Buyer represents that there are no contingencies to Buyer's obtaining the cash portions of the purchase price and closing costs to buy the Property (collectively the "Cash Funds"). Buyer shall neither delay nor extend the Scheduled Closing Date to obtain the Cash Funds.

X  C-23  **Contingency on Obtaining "Cash Funds."** Buyer's obligation to buy the Property is subject to the following contingencies to Buyer obtaining the Cash Funds: Approval of final sales contract by Buyers attorneys

**FINANCING CONTINGENCIES** (Choose all that apply)

NA  C-24  **Financing Contingency.** Buyer's obligation to buy the Property is subject to Buyer obtaining final written approval for the loan described in this DROA ("Mortgage Loan"). If Buyer does not obtain final written loan approval in the time specified, Buyer may terminate this DROA and the Termination Provision shall apply. Buyer may increase the amount of Buyer's Cash Funds and thereby reduce the amount of Buyer's Mortgage Loan or waive this Financing Contingency and purchase the Property on an all cash basis. If Buyer elects either of these two options, Buyer shall promptly give written notice of such election to Escrow and to Seller, together with evidence of Buyer's ability to do so.

NA  C-25  **Buyer's Agreements Relating to Buyer's Mortgage Loan.** Seller's obligation to sell the Property is subject to: (a) Buyer making Buyer's best efforts to obtain the Mortgage Loan, which efforts shall include such things as submitting a complete loan application package (including the payment of fees for credit report, appraisal, and applying for such insurance's as may be required) within NA _____ days after the Acceptance Date; (b) Buyer's delivery to Seller of a loan pre-qualification letter from the Lender by NA _____ days after the Acceptance Date. Such loan pre-qualification letter shall state that it is subject to verification of loan application items, the credit report, and the Property appraisal; and (c) Buyer's delivery to Seller of the final written loan approval by NA _____ (Date). Final loan approval shall state that Buyer is qualified for and Lender can make the loan. Buyer hereby authorizes Seller and Seller's Broker to contact Buyer's lender and Escrow regarding the status of Buyer's loan application.

NA  C-26  **Contingency on Assumption of Seller's Existing Mortgage(s).** Buyer's obligation to buy the Property is subject to Buyer's assumption of Seller's existing loan(s) ("Seller's Mortgage") on the terms described in Paragraph C-1 of this DROA. Buyer shall make application to assume Seller's Mortgage within NA _____ days after the Acceptance Date and shall provide evidence of approval for the assumption no later than NA _____ days after the Acceptance Date. Buyer understands Seller does not warrant the assumability, the terms and conditions of Seller's Mortgage or the assumption terms. If the terms to assume Seller's Mortgage materially differ from those set forth in this DROA, then Buyer may either elect to terminate this DROA or to assume Seller's Mortgage on such terms. Buyer shall reimburse Seller at closing for Seller's existing reserve account balances. If a Lender does not release Seller from liability under Seller's Mortgage, Seller may elect to terminate this DROA and the Termination Provision shall apply.

C-27  **Seller's Right to Terminate DROA on Financing Contingencies.** Seller's obligation to sell the Property is contingent upon Buyer meeting each of the deadlines set forth in Paragraphs C-25(a), C-25(b) and C-26 or other financing deadlines set forth in this DROA. If any such Contingency is not met by the end of the Contingency Period, Seller may elect to terminate this DROA **WITHIN FIVE (5) DAYS AFTER THE END OF THE CONTINGENCY PERIOD** and the Termination Provision will apply. However, this right of Seller to terminate shall no longer apply if Buyer has elected to proceed on an all cash basis pursuant to Paragraph C-24 and Buyer has indicated in writing an intention to proceed and has provided Seller with reasonable assurance of Buyer's ability to do so.
IF THROUGH NO FAULT OF BUYER, Buyer is unable to deliver to Seller the final written loan approval by the end of the Contingency Period as stated in Paragraph C-25(c), or Buyer is unable to provide evidence of approval for the assumption of Seller's Mortgage by the end of the Contingency Period as stated in Paragraph C-26, then the deadline period shall be extended for a reasonable period of time but not for more than NA _____ days. If Buyer is unable to deliver to Seller the final written loan approval by the end of the extended period or Buyer is unable to provide evidence of approval for the assumption of Seller's Mortgage by the end of the extended period, Seller may elect to terminate this DROA **WITHIN FIVE (5) DAYS AFTER THE END OF THE CONTINGENCY PERIOD** and the Termination Provision shall apply. In no event shall the original Scheduled Closing Date stated in Paragraph C-8 be extended unless agreed upon in writing by all parties involved.

**DEFAULT PROVISIONS**

C-28  In the event Buyer fails to perform Buyer's obligations under this DROA (Seller not being in default), Seller may (a) bring an action for damages for breach of contract (b) retain the initial deposit and all additional deposits provided for herein as liquidated damages, and (c) Buyer shall be responsible for any costs incurred in accordance with this DROA.

C-29  In the event Seller fails to perform Seller's obligations under this DROA (Buyer not being in default), Buyer may (a) bring an action for damages for breach of contract, (b) seek specific performance of this DROA, and (c) Seller shall be responsible for any costs incurred in accordance with this DROA.

DK  01/01/02
BUYER'S INITIALS & DATE                                                           ★  SELLER'S INITIALS & DATE
©Hawaii Association of REALTORS®                   Page 5 of 12                         RR201 Rev.6/01
Prepared by: Terry Kamen, R         Co.: Makai Properties                               S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 6/01, 408-947-2107. www.formsrus.com

008 1388

S 00585

C-30   The foregoing shall not exclude any other remedies available under this DROA to either Seller or Buyer on account of the other party's default.

C-31   In the event of default by a party and/or a legal action or arbitration (including a claim by a Broker for commission), the prevailing party shall be entitled to recover all costs incurred including reasonable attorney's fees.

**MEDIATION AND ARBITRATION**

C-32   Mediation. If any dispute or claim arises out of this DROA during this transaction or at any time after closing, between Buyer and Seller, or between Buyer and/or Seller and a Broker or the Broker's sales agents assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute, Buyer and Seller agree in good faith to attempt to settle such dispute or claim by non-binding mediation. This paragraph shall not apply to any complaint of unethical conduct against a Broker or the Broker's sales agents who are obligated to comply with the Code of Ethics of the National Association of REALTORS®. Such complaints must be brought before the Local Board of REALTORS® of which the Broker or sales agent is a member.

[NA ]C-33   Arbitration. If any dispute or claim arises out of this DROA during this transaction or at any time after closing between Buyer and Seller, or between Buyer and/or Seller and a Broker or the Broker's sales agents assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute through mediation as stated in Paragraph C-32, then such dispute or claim shall be decided by neutral binding arbitration before a single arbitrator, acting under the commercial arbitration rules of a Hawaii dispute resolution provider. Judgment upon an award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator may award reasonable attorney's fees and costs to the prevailing party.

In the event of an unresolved dispute or claim, we elect arbitration and waive our right to litigation. (Initial below.)

( ..OR.. /_____..) (_____/_____.)
         Buyer(s)                                                  Seller(s)

C-34   Third Party Claims. It is understood that if such dispute or claim is made by or against a third party who is not obligated or willing to mediate or arbitrate such dispute or claim, then Buyer and Seller shall not be required to mediate or arbitrate such dispute or claim.

**TITLE**
Preliminary Title Report. Escrow is instructed to promptly order a Preliminary Title Report on the Property for delivery by Seller to Buyer.

C-35   Title. Seller agrees, subject to Paragraph C-36 if selected, to convey the Property with warranties vesting marketable title in Buyer, free and clear of all liens and encumbrances EXCEPT: (a) easements, covenants, conditions, reservations or restrictions now of record WHICH DO NOT MATERIALLY AFFECT THE VALUE OF THE PROPERTY and (b) _____

(Choose C-36 OR C-37)

[NA ]C-36   If the preliminary title report, or any other report reveals that title cannot be delivered by Seller in accordance with Paragraph C-35, Seller shall use Seller's best efforts to cure any defects. If, within NA _____ days following receipt of any reported discrepancies Seller is unable to cure such defects in title, Buyer may elect to purchase the Property with such defect(s) in title and Seller shall not be liable if Seller had acted in good faith. If Buyer elects not to accept the Property with such defects, either Buyer or Seller may terminate this DROA and the Termination Provision shall apply.

[k ]C-37   If after Buyer's review of the preliminary title report, Buyer is not satisfied with the condition of the title to the Property, Buyer may elect; within 15 _____ days of Buyer's receipt of the preliminary title report, to terminate this DROA and the Termination Provision shall apply.

**TRANSACTIONS INVOLVING FOREIGN OR NON-RESIDENT BUYER AND SELLER**

C-38   HARPTA Withholding Required if Seller is a Non-Resident of the State of Hawaii. Under Hawaii law, if Seller is a non-resident person or entity (corporation, partnership, trust, or estate) of the State of Hawaii, Buyer must withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward the amount with the appropriate form to the State Department of Taxation. Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from HARPTA within fourteen (14) days of the Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the State Department of Taxation.

OR  01/01/02
BUYER'S INITIALS & DATE                                                    SELLER'S INITIALS & DATE
©Hawaii Association of REALTORS®         Page 6 of 12                      RR201 Rev.6/01

Prepared by: Terry Kamen, R         Co.: Makai Properties                  S/N: W10-6193
              Printed using Software from Professional Computer Forms Co. v. 6/01, 408-847-2107, www.formsrus.com

008 1389

S 00586

C-39  **FIRPTA Withholding Required if Seller is a Foreign Person.** Under the Internal Revenue Code, if Seller is a foreign person or entity (non-resident alien, corporation, partnership, trust, or estate), Buyer must generally withhold a specified percentage of the "amount realized" by Seller on the sale of the Property and forward this amount to the Internal Revenue Service ("IRS"). Such withholding may not be required if Seller obtains and provides Buyer with an authorized exemption or waiver from withholding. If Seller does not provide Buyer with a certificate of exemption or waiver from FIRPTA within fourteen (14) days of Acceptance Date, Escrow is hereby authorized and instructed to withhold/collect from Seller the required amount at closing and forward it to the IRS.

C-40  **Additional Disclosures Required by Foreign Buyers and Sellers.** Buyer and Seller understand that under statutes and ordinances such as the Agricultural Foreign Investment Disclosure Act of 1978, the International Investment and Trade in Services Survey Act, and the revised Ordinances of the City and County of Honolulu, among others, disclosures are required by foreign Buyers and/or Sellers under certain conditions.

NA ]C-41  **STAKING & SURVEY** (Choose C-41 OR C-42) This may/may not apply to condominiums or cooperatives. Staking (Boundary Markers). Prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a registered land surveyor stake the Property. Buyer may have a registered land surveyor verify the accuracy of the location of the stakes prior to closing. Seller shall reimburse Buyer for the cost of this verification at closing ONLY if the location of the original stakes proves to be inaccurate. Buyer understands that staking is not a survey and does not confirm the accuracy of the description or the land area of Property, or the absence of encroachments onto the Property or onto a neighboring property.

X ]C-42  Survey. Prior to the Scheduled Closing Date, Seller shall, at Seller's sole cost and expense, have a registered land surveyor (a) stake the Property even if the stakes are visible and (b) if improvements exist along the Property line, provide Buyer with a map (with surveyors stamp) and accompanying report to show the perimeters of the Property and the location of any improvements in the vicinity of the perimeter Property lines. This survey and map may not address whether improvements on the Property are in compliance with State and/or County requirements and/or subdivision covenants.

C-43  **Boundary Encroachment.** If an encroachment onto an adjoining property or onto the Property by an adjoining owner is revealed or discovered, such encroachment either shall be removed or Seller shall obtain an encroachment agreement(s) with the adjoining owner(s) which is contingent on Buyer's approval. If neither occurs within 15 days of discovery or by the Scheduled Closing Date, whichever occurs earlier, Buyer may accept the encroachment(s) or elect to terminate this DROA and the Termination Provision shall apply. Buyer should be aware that, under certain circumstances, Hawaii law allows acceptable tolerances for discrepancies involving improvements built in the vicinity of the perimeter of the Property lines. This paragraph is not applicable unless either Paragraph C-41 or C-42 is checked.

C-44  **SELLER'S DISCLOSURES** (Required by Hawaii Statute)
**Seller's Obligation to Disclose.** Under Hawaii law, Seller is obligated to fully and accurately disclose in writing to Buyer any fact, defect, or condition, past or present, that would be expected to measurably affect the value of the Property to a reasonable person. Within 15 days from the Acceptance Date, Seller shall provide Buyer with a written disclosure statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of the Seller;(ii) can be observed from visible, accessible areas; or, (iii) which are required by Section 508D-15 of the Hawaii Revised Statutes.

Section 508D-15 of the Hawaii Revised Statutes provided that when the property lies: (i) within the boundaries of a special flood hazard area as officially designated on Flood Insurance Administration maps promulgated by the appropriate Federal agencies for the purposes of determining eligibility for emergency flood insurance programs; (ii) within the boundaries of the noise exposure area shown on maps prepared by the Department of Transportation in accordance with Federal Aviation Regulation Part 150-Airport Noise Compatibility Planning (14 Code of Federal Regulations Part 150) for any public airport; (iii) within the boundaries of the Air Installation Compatibility Use Zone of any Air Force, Army, Navy, or Marine Corps airport as officially designated by military authorities; or (iv) within the anticipated inundation areas designated on the Department of Defense's Civil Defense Tsunami Inundation Maps; subject to the availability of maps that designate the four areas by tax map key. If not available, no information will be provided.

DR 01/01/02
BUYER'S INITIALS & DATE

©Hawaii Association of REALTORS®                Page 7 of 12                SELLER'S INITIALS & DATE
                                                                             RR201 Rev.6/01

Prepared by: Terry Kamen, R        Co: Makai Properties                       S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 8/01, 408-947-2107, www.formsrus.com



008 1390
S 00587

C-44A **Later Discovered Information.** Under Hawaii law, if after Seller delivers a disclosure statement to Buyer and prior to closing, Seller becomes aware of information which was not previously disclosed or which makes any statement in the disclosure statement inaccurate, and said information directly, substantially, and adversely affects the value of the Property, then Seller shall provide an amended disclosure statement (a written statement prepared by Seller or at Seller's direction) to Buyer within ten (10) days after the discovery of the inaccuracy, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the Property. Buyer's rights upon receipt of the amended disclosure statement are found in Paragraph C-46.

C-45 **Seller's Disclosure Is Not a Warranty.** This disclosure statement is NOT a warranty of any kind. Under Hawaii law, the disclosure statement shall not be construed as a substitute for any expert inspection, professional advice, or warranty that Buyer may wish to obtain.

C-46 **Buyer's Rights Upon Receipt of Disclosure Statement.** Seller is required by law to obtain from Buyer an acknowledgment of receipt of the disclosure statement in writing. Buyer shall acknowledge receipt of the disclosure statement in writing. Upon receipt of the disclosure statement, Buyer shall have 15 days to examine the statement and to rescind the DROA. Should Buyer elect to rescind the DROA, Buyer must give Seller directly or Seller's agent written notice of such rescission within the stated time period. Upon receipt by Buyer of an amended disclosure statement, or upon discovery by Buyer of a failure by Seller to disclose material facts, or upon discovery by Buyer that the disclosure statement contains an inaccurate assertion that directly, substantially, and adversely affects the value of the Property, Buyer may elect to rescind the DROA. Buyer shall have 15 days from discovery thereof or from receipt of the amended disclosure statement, whichever is earlier, to indicate in writing an election to rescind the DROA. Or Buyer may elect, in writing, to accept the amended disclosure statement prior to the end of the rescission period.

C-47 **Buyer's Remedies if Seller Fails to Comply with C-44 or C-44A.** Buyer may elect to complete the purchase of the Property even if Seller fails to comply with Sections C-44 or C-44A. When Buyer is provided a disclosure statement or amended disclosure statement and Buyer decides to rescind the DROA, Buyer is limited in damages to the return of all deposits; and in such case, Buyer's deposits shall be immediately returned. If seller negligently fails to provide the required disclosure statement or amended disclosure statement, Seller shall be liable to Buyer for the amount of actual damages suffered as a result of the negligence. In addition to the above remedies, a court may also award the prevailing party's attorney's fees, court costs, and administrative fees.

C-48 **Mediation and/or Arbitration.** Under Hawaii law, any dispute pertaining to the Mandatory Seller's Disclosure Statute shall be handled in the same manner as agreed upon in the DROA.

C-49 **Asbestos Disclosure.** Buyer is aware that asbestos materials are hazardous to one's health, particularly if asbestos fibers are released into the air and inhaled. In the past (before 1979, but possibly since) asbestos was a commonly used insulation material in heating facilities and in certain types of floor and ceiling materials, shingles, plaster products, cement and other building materials. Buyer is aware that Buyer should make appropriate inquiry into the possible existence of asbestos on the Property. Structures having "popcorn" or "cottage cheese" type ceilings may contain asbestos fibers or asbestos-containing material. Such ceilings should not be disturbed since it could release asbestos fibers in the air. Any disturbance should be done only by licensed abatement contractors.

C-49A **Hazardous Waste and Toxic Substances Disclosure.** Buyer is aware that federal and state laws place strict liability on property owners for dangers caused by hazardous waste management and may require that such owner pay for the cost of the cleanup of hazardous substances and other toxic substances. Buyer is aware that Buyer should make appropriate inquiries into the past use of the Property and should seek an environmental assessment to ascertain the possible existence of such hazardous substances or materials on or under the Property. Buyer is aware Buyer may have liability for hazardous substances located on or under the Property even if Buyer did not cause such substances to be on or under the Property.

C-50 **Sex Offender Registration ("Megan's Law").** Hawaii has enacted a law requiring sex offenders to register with the Attorney General's office and allowing public access to relevant information regarding sex offenders. A sex offender must provide certain relevant information including the street name and zip code of the sex offender's current and future residence and place of employment. This information is available at the Hawaii Criminal Justice Data Center and at one or more designated police stations in each county. Neither Seller, nor any real estate agent is required to obtain information regarding sex offenders.

OR 01/05/02
BUYER'S INITIALS & DATE
©Hawaii Association of REALTORS®

Page 8 of 12

SELLER'S INITIALS & DATE
RR201 Rev. 8/01

Prepared by: Terry Kamen, R        Co.:Makai Properties                                S/N: W10-6193
Printed using Software from Professional Computer Forms Co. v. 8/01, 408 947-2107, www.formsrus.com

008  1391

S 00588

## INSPECTIONS, MAINTENANCE AND WARRANTIES

C-51  **Inspection of Property.** At Buyer's sole cost and expense Buyer may (personally or by any expert, professional, or other representative of Buyer's choice): (a) inspect the Property or any portion thereof; (b) inspect all major appliances and fixtures (plumbing, electric, and gas) included in the sale; (c) inspect all public records relating to the Property; and (d) inspect all applicable laws and regulations which may affect the property. Seller shall provide Buyer and Buyer's representatives access to the Property for this purpose, during reasonable hours with reasonable prior notice to Seller. The obligation of Buyer to purchase the Property is contingent upon Buyer's approval of the results of such inspection within 120 days after the Acceptance Date. All inspections must be completed within this time period. If Buyer disapproves of the results within such time period, Buyer may elect to terminate this DROA pursuant to Paragraphs C-20 and C-21. If Buyer fails to so elect, Buyer will have waived this contingency.

[X ]C-52  **Property Condition Maintenance.** Seller shall maintain until closing the interior and exterior of the Property in the same condition and repair as they were on the date that Buyer inspected the Property pursuant to Paragraph C-51, or as agreed upon between Buyer and Seller, pursuant to Buyer's Inspection under Paragraph C-51.

[X ]C-53  **Final Walk Through.** Buyer and/or Buyer's representative shall have the right to conduct a final walk through of the Property no later than 5 days prior to closing: (a) to confirm that the Property is in the same condition and repair that it was on the date that Buyer inspected the Property pursuant to Paragraph C-51 and/or (b) to inspect the repairs and/or replacements made by Seller, as agreed between Buyer and Seller, pursuant to Buyer's inspection under Paragraph C-51. If Buyer and/or Buyer's representative fail to conduct the final walk through of the Property within the time period, Buyer will have waived this right and Paragraph C-53 will be deemed null and void. If Seller does not maintain the Property as stated in Paragraph C-52, such that repairs and maintenance are required, then prior to closing, Seller shall repair those items to return them to the same condition and repair as they were on the date that Buyer inspected the Property pursuant to Paragraph C-51. If any repairs and maintenance required have not been made by closing, Seller agrees that an amount equal to 150% of the estimated cost of repair and maintenance shall be Escrow until the repairs are completed; provided however, that any remaining funds held will be automatically disbursed to Buyer by Escrow if all repairs and maintenance are not completed within 5 days after closing. All repairs and maintenance bills will be paid through Escrow and any balance remaining after completion of all repairs and maintenance shall be returned to Seller.

C-54  **No Continuing Warranty.** Buyer understands that no continuing warranty after closing regarding the interior or exterior of the Property is expressed or implied.

C-55  **Home Warranty Programs.** Buyer understands that Buyer may obtain from a third party, for a fee, home warranties covering appliances, electrical and plumbing equipment and other items included with the Property. If such a home warranty is available, it may be obtained at Buyer's expense from any provider of Buyer's choice.

[NA ]C-56  **Existing Warranties, Plans, etc.** Seller shall provide to Buyer at closing all existing warranty documents in Seller's possession covering the improvements and personal property being sold to Buyer; instruction booklets in Seller's possession covering the appliances being sold and all originals and copies in Seller's possession of blueprints, specifications, and copies of architectural or engineering drawings relating to the Property. Buyer understands: (a) any warranties delivered by Seller to Buyer represent obligations of other persons, not Seller; (b) the warranty and other documents are provided for informational purposes only; (c) may not reflect improvements as built; and (d) Seller does not promise that any such warranties are transferable to Buyer, and that Buyer must contact the providers of such warranties to determine whether the warranties are transferable to Buyer.

[NA ]C-57  **Interior and Exterior Cleaning.** Prior to closing, Seller shall, at Seller's expense, have cleaned the interior of the improvements on the Property. Such cleaning shall include all appliances, carpets, cupboards, drawers, floors, jalousies, screens and windows. Seller shall also dispose of all trash, junk, and brush both within or outside any improvements located on the Property.

[NA ]C-58  **Pet Related Treatment.** Prior to closing, Seller shall at Seller's expense remove any pets from the Property, have the carpets within the improvements on the Property professionally cleaned, and the interior of the Property treated for fleas/ticks by a professional. If Seller does not have the interior of the Property treated for fleas/ticks by a professional as stated, then Seller agrees that an amount equal to 150% of the estimated cost of professionally treating the Property for fleas/ticks shall be held in Escrow until completed; provided however, that any remaining funds held will be automatically disbursed to Buyer by Escrow if the Property is not professionally treated for fleas/ticks within NA days after closing. All professional treatment bills will be paid through Escrow and any balance remaining after completion of professional treatment shall be returned to Seller.

DR 01/01/02
BUYER'S INITIALS & DATE

SELLER'S INITIALS & DATE

©Hawaii Association of REALTORS®   Page 9 of 12   RR 201 Rev. 9/01

Prepared by: Terry Kamen, R   Co.: Makai Properties   S/N: W10-6193

Printed using Software from Professional Computer Forms Co. v. 8/01, 408-947-2107, www.formsrus.com

008 1392
S 00589

**TERMITE PROVISIONS**
Buyer is aware that the State-approved Termite Inspection Report (TIR) addresses only visible evidence of active termite infestation and visible damage in accessible areas. It does not address infestation or damage occurring in inaccessible areas of the improvements described in this DROA. Seller agrees to disclose, in Seller's disclosures, any prior and/or current infestation and damage of which Seller is aware.

C-59   Termite Inspection Contingency. Within NA ___ days of the Acceptance Date NA ___ shall select a
       Buyer or Seller
licensed pest control company ("Company"), to conduct an inspection and issue a TIR on the improvements which are part of the Property. Should such party fail to select a Company and notify the other party in writing of the name of a Company within the time stated, the other party shall select a Company within five (5) days thereafter. Seller shall promptly order the inspection and TIR from the selected Company. The TIR shall be delivered to Buyer by NA ___ NA ___, shall pay for the inspection and
                                                                     Buyer or Seller
the issuance of the TIR at a cost not to exceed NA ___. If
Buyer's lender requires an updated TIR prior to funding Buyer's loan, Buyer shall pay for the updated report.

If the TIR indicates visible evidence of active termite infestation, Seller shall order and pay for recommended treatment for that condition (not to include preventative maintenance). Buyer and Seller understand such treatment may cause damage to plants. The obligation of the Buyer to purchase the Property is contingent upon the delivery to Buyer within the time specified above of a TIR stating that there is no visible evidence of active termite infestation or the treatment of such improvements by no later than five (5) days prior to the Scheduled Closing Date. If the Contingency is not fulfilled in a timely manner, Buyer may terminate this DROA and the Termination Provision shall apply.

C-60   **Termite Damage.** In the event the TIR indicates there is visible damage to the improvements caused by termite infestation, and said damage directly, substantially and adversely affects the value of the Property, then Seller shall make appropriate disclosures under Paragraph C-44A.

**RENTAL PROPERTY MATTERS** (Choose C-61 OR C-63)

[X] C-61   **Existing Leases.** Buyer shall accept title to the Property subject to the existing: (Choose all that apply)
           [X] Inventory and Condition Form                    [ ] Short Term Vacation Rental Reservation(s)
           [X] Lease(s)                                        [ ] Other ___
           [X] Rental Management Contract(s)                   [ ] Other ___

Copies of such documents shall be delivered to Buyer within 15 ___ days of Acceptance Date. If within 15 ___ days of receipt of these item(s), Buyer does not accept the Property based upon information in these documents, Buyer may terminate this DROA and the Termination Provision shall apply. Any security deposits or vacation deposits will be transferred to Buyer at closing.

C-62   **Lease Changes During Escrow.** During the escrow period, Seller shall not, without the written consent of Buyer, make any changes to existing leases or enter into any new leases that extend beyond the Scheduled Closing Date.

[X] C-63   **Possession of Property at Closing.** Seller shall deliver possession of the Property at closing vacant and free of tenants, leases, rental management contract, short term rental reservation or any other rental commitments.

**CONDOMINIUMS/SUBDIVISIONS/HOMEOWNER ORGANIZATIONS** (Choose all that apply)

[NA] C-64   **Contingency on Homeowner Organization Documentation Approval.** Buyer's obligation to purchase the Property is contingent upon Seller providing the following applicable information to the Buyer for review and approval:

[ ] Approved Minutes of the last three (3) Board of      [ ] Current and/or Proposed Budget
    Directors Meeting                                    [ ] Current Financial Statement
[ ] Articles of Incorporation/Association and            [ ] Current House Rules
    Amendments, if any                                   [ ] Declaration and Amendments
[ ] Board of Directors and Association minutes issued    [ ] Inventory of Furniture and Furnishings
    during the escrow period, if applicable              [ ] Minutes of the last Annual Meeting
[ ] By-laws and Amendments                               [ ] Property Information Form RR105c, if obtainable
[ ] Copy of any and all pending litigation complaints    [ ] Reserve Study or Summary, if obtainable
    filed by or against the Owner's Association and/or   [ ] Other ___
    its directors that are currently unresolved, if any  [ ] Other ___

Seller, at Seller's expense, shall furnish these documents to the Buyer within ___ days of Acceptance Date. If within ___ days of receipt of these documents, Buyer does not accept the Property based on information contained in these documents, Buyer may terminate this DROA and the Termination Provision shall apply. In the event that this DROA is cancelled, Buyer agrees to return all documents to Seller or Seller's Agent, including any others provided to Buyer during the escrow period. (Note: Seller shall provide any and all pertinent information on parking stalls, storage spaces, maintenance fees, and any other material disclosures to Buyer.)

DR  01/01/02
BUYER'S INITIALS & DATE                                         SELLER'S INITIALS & DATE

© Hawaii Association of REALTORS®              Page 10 of 12                              RR 201 Rev. 4/01
Prepared by: Terry Kamen, R           Co: Makai Properties                                S/N: W10-6193

| | | |
|---|---|---|
| [x] | C-65 | **Common Element Discrepancies.** Seller is not responsible for repair of condominium and cooperative common elements and limited common elements. Seller is only responsible for reporting any defects or damages to the Association of Apartment Owners or other governing body insofar as Seller's unit is affected. |
| [x] | ]C-66 | **Contingency on Subdivision Documentation Approval.** Buyer's obligation to purchase the Property is contingent upon Seller providing the CC&R's (Conditions, Covenants, and Restrictions) and any other applicable title documents to the Buyer for review and approval. Seller, at Seller's expense, shall furnish the documents to the Buyer within __15__ days of Acceptance Date. If within __15__ days of receipt of the documents, Buyer does not accept the Property based on information contained in the documents, Buyer may terminate this DROA and the Termination Provision shall apply. In the event that this DROA is canceled, Buyer agrees to return the documents to Seller or Seller's Agent. |
| [x] | ]C-67 | **OTHER SPECIAL TERMS** (Please number)<br>1. 120 day due diligence period for the Buyer with Seller's full cooperation<br>2. Contingent upon Buyer receiving an extension for the 300 unit housing build out required under the present County zoning until 1/1/2013. |

**BROKERS SERVICES AND DISCLAIMERS**

- **C-68** **Scope of Service.** The Brokers assisting in this sale, including their owners, agents and employees (collectively the "Brokers"), recommend that Buyer and Seller each consult their own accountant, appraiser, architect, attorney, contractor, designer, estate planner, home inspector, insurance advisor, land use professional, pest control expert, surveyor, title insurer, zoning expert, and other professionals should they have any questions within those fields about this sale. Buyer and Seller understand and acknowledge that neither party is relying upon the Brokers for any of the foregoing services or advice.
- **C-69** **Disclaimers by Brokers.** Buyer and Seller understand that the Brokers have not made any representations or warranties, and have not rendered any opinions about: (a) the legal or tax consequences of this transaction; (b) the legality, validity, correctness, status or lack of any building permits which may have been required for the Property; or (c) the size of any improvements on the Property, or the land area of the Property or the location of the boundaries.
- **C-70** **Rental Property.** If the Property is rented, Buyer understands that Seller and the Brokers are not offering to sell or selling the Property together with any existing or future rental pool or other rental arrangement. Seller and the Broker make no representations or guarantees about future rents or future resale value. Buyer understands that Buyer is assuming all risks relating to the foregoing, including the rental of the Property, should Buyer wish to rent it out. This sale includes real property only and the intent is not to convey a security or investment security as defined by the U.S. Securities and Exchange Commission or other governmental agency.
- **C-71** **Obligations.** Broker shall not be held liable to either Buyer or Seller for the failure of either Buyer or Seller to perform their obligations pursuant to this DROA.
- **C-72** **Permission.** The parties grant the Broker(s) permission to supply data to the Multiple Listing Service regarding the sales price, terms, and listing status of this transaction for use by other brokers and real estate professionals in making market studies, providing service to the public and advising their clients.
- **NA ]C-73** **Disclosure of Real Estate Licensing Status.** Hawaii law requires that licensees disclose that they hold a real estate license in any transaction in which they are purchasing or selling real property as a principal, or in which they are buying for themselves, immediate relatives, or an entity in which they have an interest. If applicable, the licensee(s) in this transaction disclose the following:

**FACSIMILE (FAX) SIGNATURES AND COUNTERPARTS**

- **C-74** Fax executed copies of this DROA and any related documents shall be fully binding and effective for all purposes whether or not originally executed documents are transmitted to Escrow. Fax signatures on documents will be treated the same as original signatures, however, each party agrees to promptly forward original executed documents to Escrow. The parties understand conveyance, mortgage and other recordable documents must be delivered in original form and will not be acceptable if signed only on facsimile.
- **C-75** This DROA and any addenda and related documents may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so signed, shall be deemed to be an original, and all of which taken together shall constitute one and the same document, binding upon all of the parties, notwithstanding that all of the parties do not sign the original or the same counterpart.

---

O.R.  01/01/02
**BUYER'S INITIALS & DATE**
© Hawaii Association of REALTORS®
Prepared by: Terry Kamen, R

Page 11 of 12
Co. Makai Properties

**SELLER'S INITIALS & DATE**
RR 201 Rev 6/01
S/N: W10-6193

FROM                                                                2002年 2月14日(木)11:11/番11:03/文書号4203676574 P 15

**"ACCEPTANCE DATE" AND OTHER DEFINITIONS**

C-76 As used in this DROA, the term "Acceptance Date" means the date on which this DROA becomes binding upon the parties (i.e. when Buyer's Offer is accepted by Seller or Seller's Counter Offer is accepted by Buyer.)

C-77 As used in this DROA, the term "day" means a calendar day. All dates and times are based on Hawaiian Standard Time.

C-78 Time is of the Essence. Except as otherwise provided in this DROA, time is of the essence in the performance by all parties in their respective obligations to this DROA.

C-79 Complete Agreement. This DROA constitutes the entire agreement between Buyer and Seller and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements (both written and oral) of Buyer and Seller. No variation or amendment of this DROA shall be valid or enforceable without written approval by Buyer and Seller. All agreements and representations about the Property must be set forth in writing and the parties agree that to be effective any representation made by a Broker or any party hereto must be set forth in writing in this DROA or an amendment hereto or in any required Disclosure Statement. Buyer and Seller shall each hold harmless and release the Broker(s) from any claims based upon any alleged representation which is not set forth in writing as stated in this paragraph.

Offer Date 1/1/02                5:00  AM/PM   Buyer's Name David Resnick

Buyer's Address on file with Makai Properties Signature _____

                                                SS# or Tax ID  053 44 1015

Phones on file with Makai Properties    Buyer's Name

Fax _____                             Signature _____

E-Mail on file with Makai Properties    SS# or Tax ID

**SECTION D: ACCEPTANCE OR COUNTER OFFER**

[ ] ACCEPTANCE OF OFFER. Seller agrees to sell the Property at the price and terms offered above and acknowledges receipt of a copy of this Offer and acceptance.

[ ] COUNTER OFFER. Seller agrees to sell the Property at the price and terms offered above as amended by the attached Counter and acknowledges receipt of a copy of the Offer.

**IN EITHER EVENT:**

Seller agrees to pay to Makai Properties _____ (Listing Broker) a commission for the sale of the Property in the amount of 6% of sale price _____ per the terms of the Listing Contract or if there is no listing contract, then per other agreement between Seller and Broker. Seller instructs Escrow to pay the commission directly to Broker at closing in U.S. Dollars. These instructions cannot be changed without the written agreement of the Listing Broker and Seller. Seller further consents to Listing Broker's sharing of the commission with another real estate broker who may have provided services to Buyer. In the event Buyer defaults and Seller retains any of Buyer's deposit or obtains other monetary damages against the Buyer, Seller shall pay one-half thereof to Listing Broker as a commission, provided, however, that this amount so paid to Listing Broker shall not exceed what would have been the full commission to the Listing Broker.

Date _____                AM/PM   Seller's Name _____

Seller's Address _____            Signature _____

                                    Tax ID for IRS _____

Phones _____                      Seller's Name _____

Fax _____                         Signature _____

E-Mail _____                      Tax ID for IRS _____

Seller is a Foreign Person[ ]  Non-Hawaii Resident[ ]  Owner/Occupant[ ]  Other[ ] _____

**BUYER'S ACKNOWLEDGMENT OF SELLER'S ACCEPTANCE:** The undersigned acknowledges receipt of a copy of the acceptance of this Offer.

Signature: _____                  Date _____            AM/PM

NOTE: THERE IS NO WARRANTY ON PLAIN LANGUAGE. An effort has been made to put this agreement into plain language. But there is no promise that it is in plain language. In legal terms, THERE IS NO WARRANTY, EXPRESSED OR IMPLIED, THAT THIS AGREEMENT COMPLIES WITH CHAPTER 487A OF THE HAWAII REVISED STATUTES, AS AMENDED. This means that the Hawaii Association of REALTORS® is not liable to any Buyer, Seller, or other person who uses this form for any damages or penalty because of any violation of Chapter 487A. People are cautioned to see their own attorneys about Chapter 487A (and other laws that may apply).

©Hawaii Association of REALTORS®          Page 12 of 12                     RR 201 Rev. 6/01
Prepared by: Terry Kamen, R              Co: Makai Properties               S/N: W10-6193
              Printed using Software from Professional Computer Forms Co. v. 8/01, 408-947-2107, www.formsrus.com

008  1395

S 00592