Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON            1126-0
GLENN T. MELCHINGER    7135-0
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai‘i  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
Email:  gtm@ahfi.com

Attorneys for Plaintiffs
and Third-Party Defendants,
the SS Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | | |
|---|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) ) ) | CIVIL NO. CV 04-00124 ACK/BMK |
| Plaintiff, | ) ) | CONSOLIDATED CASES |
| vs. | ) ) ) | **THE SPORTS SHINKO COMPANIES' MEMORANDUM IN OPPOSITION TO KG DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK FILED ON MARCH 29, 2006; DECLARATION OF MICHIHIRO MORI; EXHIBIT M-1"; DECLARATION OF TSUGIO FUKUDA; EXHIBITS 1-2; DECLARATION OF GLENN T. MELCHINGER; EXHIBITS 3-4; DECLARATION OF STEVEN C. SILVER; LIST OF TRANSLATED DOCUMENTS; CERTIFICATE OF SERVICE** |
| QK HOTEL, LLC, a Hawai`i limited liability company, et al., | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| FRANKLIN K. MUKAI, | ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation, et al., | ) ) ) | (Non Hearing Motion) |
| Third-Party Defendants. | ) ) ) ) | |

```
                                    )
SPORTS SHINKO (USA) CO., LTD.,  )  CIVIL NO. CV 04-00125
a Delaware corporation,         )          ACK/BMK
                                    )
            Plaintiff,          )
                                    )
       vs.                      )
                                    )
PUKALANI GOLF CLUB, LLC, a      )
Hawai`i limited liability       )
company, et al.,                )
                                    )
            Defendants,         )
                                    )
       and                      )
                                    )
FRANKLIN K. MUKAI,              )
                                    )
            Third-Party         )
            Plaintiff,          )
                                    )
       vs.                      )
                                    )
SPORTS SHINKO CO., LTD.,        )
a Japan corporation, et al.,    )
                                    )
            Third-Party         )
            Defendants.         )
_____ )
                                    )
SPORTS SHINKO (USA) CO., LTD, a )  CIVIL NO. CV 04-00126
Delaware corporation,           )          ACK/BMK
                                    )
            Plaintiff,          )
                                    )
       vs.                      )
                                    )
KIAHUNA GOLF CLUB, LLC,         )
a Hawai‘i limited liability     )
company, et al.,                )
                                    )
            Defendants,         )
                                    )
       and                      )
                                    )
FRANKLIN K. MUKAI,              )
                                    )
            Third-Party         )
            Plaintiff,          )
                                    )
```

```
              vs.                    )
                                     )
SPORTS SHINKO CO., LTD.,             )
a Japan corporation, et al.,         )
                                     )
              Third-Party            )
              Defendants.            )
```

```
SPORTS SHINKO CO., LTD., a       )   CIVIL NO. CV 04-00127
Japanese corporation,            )           ACK/BMK
                                 )
              Plaintiff,         )
                                 )
              vs.                )
                                 )
OR HOTEL, LLC, a Hawai`i         )
limited liability company,       )
et al.,                          )
                                 )
              Defendants,        )
                                 )
              and                )
                                 )
FRANKLIN K. MUKAI,               )
                                 )
              Third-Party        )
              Plaintiff,         )
                                 )
              vs.                )
                                 )
SPORTS SHINKO (USA) CO., LTD.,   )
a Delaware corporation, et al.,  )
                                 )
              Third-Party        )
              Defendants.        )
```

```
SPORTS SHINKO (USA) CO., LTD.,   )   CIVIL NO. CV 04-00128
a Delaware corporation,          )           ACK/BMK
                                 )
              Plaintiff,         )
                                 )
              vs.                )
                                 )
MILILANI GOLF CLUB, LLC,         )
a Hawai`i limited liability      )
company, et al.,                 )
                                 )
              Defendants,        )
```

```
        and                     )
                                )
FRANKLIN K. MUKAI,              )
                                )
            Third-Party         )
            Plaintiff,          )
                                )
        vs.                     )
                                )
SPORTS SHINKO CO., LTD.,        )
a Japan corporation, et al.,    )
                                )
            Third-Party         )
            Defendants.         )
```

**THE SPORTS SHINKO COMPANIES' MEMORANDUM IN OPPOSITION TO KG
DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN
CV NO. 04-00128 ACK-BMK FILED ON MARCH 29, 2006**

Plaintiffs and Third-Party Defendants SPORTS SHINKO CO., LTD., SPORTS SHINKO (HAWAII) CO., LTD., SPORTS SHINKO (MILILANI) CO., LTD., SPORTS SHINKO (KAUAI) CO., LTD., SPORTS SHINKO (PUKALANI) CO., LTD., SPORTS SHINKO RESORT HOTEL CORPORATION, SPORTS SHINKO (WAIKIKI) CORPORATION, and OCEAN RESORT HOTEL CORPORATION (collectively, the "**SS Companies**") hereby oppose KG Defendants' Motion for Reconsideration of Order Denying Defendants' Motion For Summary Judgment In CV No. 04-00128 ACK/BMK, Filed on March 29, 2006, filed April 12, 2006 (the "Motion"). Below, "MIS" refers to the Defendants' memorandum in support of their Motion.

**I.    INTRODUCTION**

The KG Defendants complain that the Court did not grant their January 13, 2006 Motion for Summary Judgment (the "MSJ") despite the fact that the MSJ provided no analysis or legal authority regarding the applicable legal principles. Incredibly, the KG Defendants claim that they "*did not anticipate*" the Court's findings on "factual and legal points" points raised by their own MSJ. MIS at 1. Their lack of foresight does not require this Court to reconsider its March 29 Order (the "Order").

The KG Defendants' Motion must be denied because there is no basis for reconsideration under L.R. 60.1 and the Motion has no merit:

1.    Japan law does not apply as the KG Defendants claim.

2.    Even if Japan law applies, Defendants analysis is wrong:  the Court did not misapply Japan law, and the SS Plaintiffs are not subject to the *in pari delicto*/imputation defenses impliedly raised by Plaintiffs;

3.    The Court's Order is properly supported under U.S. law, and even the *Lafferty* case, which the KG Defendants belatedly cite, supports the SS Plaintiffs' position.

## II.    STANDARD FOR RECONSIDERATION

To justify reconsideration Defendants, must establish that their request for reconsideration is both "strongly convincing" and "not ... based on evidence and legal arguments that could have been presented at the time of the challenged decision."  *See, e.g., White v. Sabatino*, 2006 U.S. Dist. LEXIS 18540 at *5-*7, *12 (D. Haw. 2006)(J. Kay)(internal citations and quotation marks omitted).  If they clear those hurdles, under L.R. 60.1 they must show:

(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.

*Id.*

## III.  ARGUMENT

The Motion must fail.  No only could the KG Defendants have argued everything before, but also, and more importantly, their arguments are wrong.  There are no errors of law or fact, manifest or otherwise, in the Order.

### A.    The Order's Mention of Payment of Termination Fees by the "*New* Owners" Rather than the "*Former* Owners" Is Not Controversial or Significant.

The KG Defendants complain that the Order states that the "new owners" (the KG Defendants) were obligated to pay $3.5 million in "termination fees" to Resort Management Services (Hawaii), Inc. ("RMS"), the bogus management company that Toshio Kinoshita's sons were entitled to buy for only $1,500.  MIS at 1, 4-6. *Cf.* Order at 10.

This is much ado about nothing, as the Court correctly sets forth the facts regarding RMS termination fees on page 24 of the Order.  (Replacing "*new* [owners]" with "*former*" is all that would be necessary.)

The KG Defendants' re-argue that Toshio was a "poor conspirator" because he "conspired to have an insolvent company ... pay the termination fee."  MIS at 5.  By this, the Defendants apparently mean to imply that the RMS scheme was meaningless, or not a part of the scheme to sell off the SS Hawai`i properties prior to the reorganization proceeding in Japan.  This is wrong for at least two reasons.

First, "insolvent" under the Hawaii Fraudulent Transfer Act ("HUFTA") means only that one cannot pay debts as they come

due, or has more debts than assets.  Haw. Rev. Stat. § 651C-2.
Just because the SS Hawai'i subsidiaries were "insolvent" does
not mean the did not have assets to transfer to RMS.[1]

Second, the termination fees allegedly due under the
RMS management agreements represented a $3.5 million obligation
that the SS Companies would allegedly have to pay, and Toshio
Kinoshita's sons had a right to obtain the benefits of these
lucrative contracts for only $1,500.  SS COSF at Ex. "6".  Even
if the SS Hawai`i Subsidiaries did not have $3.5 million on hand,
they had an income stream from the KG Defendants' payments and
intended to assert to their lenders and the Resolution and
Collection Corporation that the RMS Management Agreements were
valid obligations and prevented liens on their Hawai'i
properties.  SS CSOF at Ex. "5".  Further, RMS's attorney
demanded payment of the unpaid termination fees in mid-2002,
after the SS-Japan reorganization proceedings had been filed.
Ex. "3" to Melchinger Decl.

**B.    The KG Defendants' Argument that Japan Law Applies, and
       that the Court Misapplied it, is Wrong.**

The KG Defendants argue that:  (1) Japan law applies to
claims and obligations of a Japan corporation and its
shareholders against these Hawai`i entities, and (2) the Order

---

[1] Indeed, Satoshi Kinoshita transferred a valuable Maui
residence to RMS only a few days after the SS-Japan bankruptcy
proceeding was filed in Japan.  This transfer was to partially
satisfy the termination fees owed by Sports Shinko (Pukalani)
Co., Ltd.  Ex. "33" to Sports Shinko's Concise Statement of Facts
filed in opposition to KG's 1/13/06 MSJ ("SS CSOF").

"misapplies" the Japan law, wrongly giving SS and Goldman Sachs "special powers." MIS at 1-2, 6-8.[2] Specifically, the KG Defendants complain that the Order's statement that "... Goldman Sachs, as owner of [Plaintiffs] has standing to bring these actions *through the named Plaintiffs*" grants Goldman Sachs[3] "special rights." MIS at 7; Order at 16. As usual, the KG Defendants, unsupported by any legal analysis, simplistically assume that Japan law is "necessarily" implicated and that the Court misunderstood and misapplied Japan law. MIS at 7.

---

[2] The KG Defendants do not argue that: (a) a Japan corporation cannot bring claims under Hawai`i law, (b) Japan law does not recoganize a Japan corporation's right to bring claims under foreign law, or (c) the HUFTA (Haw. Rev. Stat. Ch. 651C) definition of "creditors" is limited by nationality. *See* HRS Sec. 651C-1. But even if the KG Defendants are *implicitly* arguing these points, they are both wrong and these are entirely new arguments that could have been raised. *See* Mori Op., Ex. "M—1". The KG Defendants cannot raise them now. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)(motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (emphasis in original)).

[3] Both Defendants and the Order (based on Defendants' motion for summary judgment) refer to the new owner of SS-Japan genericaly as "Goldman Sachs," although the specific entity to which this term refers is not defined. The KG Defendants also state that the stock of SS-Japan was transferred between subsidiaries of "Goldman Sachs" in "transaction unknown to U.S. law," whatever that means. In fact, the stock of SS-Japan was acquired by a separate, indirect subsidiary of "The Goldman Sachs Group, Inc." ("GS Group") called South Wind Realty Finance (Cayman) Company, and is currently owned by a different, separate, indirect subsidiary of GS Group called Accordia Golf Co., Ltd. The KG Defendants have, unfortunately, engaged in repetition of the name "Goldman Sachs" without precisely defining what that means and who actually owns SS-Japan.

The KG Defendants' claim that the Court determined the rights of SS-Japan under Japan law is wrong.  In fact, the Court merely considered a *fact* stipulated to by the KG Defendants–*i.e.,* the replacement of the Kinoshitas by an innocent *kanzainin/*receiver by the Osaka District Court–when it analyzed the defenses (*in pari delicto*/imputation) that the KG Defendants raised (but failed to brief) in their MSJ.  *See* 2/28/06 Stip.

The KG Defendants' argument is vague and ambiguous in that it fails to explain: (1) the issues, claims, or defenses that Japan law allegedly governs, and (2) why Japan law should apply.

The statement in the Order that the new owner of the SS Companies has "standing" (Order at 16) means that the imputation/*in pari delicto* defenses that the KG Defendants' implicitly raised in arguing "a corporation cannot deceive itself," do not apply because Plaintiffs succeeded to the claims of the innocent receiver.  Order at 15–18.  The Court's Order is proper.  Further, the Order simply frames the issues raised by the MSJ just as the KG Defendants' counsel did at the hearing when he agreed with the Court that the "crux" of the Defendants' argument was that the SS Plaintiffs had no "standing" to bring the claims herein.  Hrg Tr. at 28:7–8.  The KG Defendants should not be heard to complain of this now.

1.  **Hawai`i Choice of Law Rules Require Application of Hawai`i Law in Determining the Applicability of the KG Defendants' Defenses to the SS Companies' Hawai`i Law Claims.**

As with their MSJ, the KG Defendants' Motion offers **no** argument, analysis, or authority supporting the application of Japan law to their affirmative defenses.[4]  This is likely because the law does not support their arguments.

In diversity cases in this District, Hawai`i conflicts of law rules determine which law applies.  *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003)(citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 18 (9th Cir. 1995)(Hawai`i substantive law applies in diversity).

The Ninth Circuit has stated that "Hawaii's choice of law creates a presumption that Hawai`i law applies unless [foreign] law 'would best serve the interests of the states and persons involved.'"  *Abramson v. Aetna Cas. & Sur. Co.*, 76 F.3d 304, 307 (9th Cir. 1996).  Hawai`i employs a flexible approach that involves "an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation."  *Mikelson v. United Servs. Auto. Ass'n*, 107 Hawai`i

---

[4] The KG Defendants cite two cases for the proposition that: "A determination of foreign law is appropriate for summary judgment."  MIS at 8, n.13.  These cases (*McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101, 1108 (D.C. Cir. 2001); *Kim v. Co-op. Centrale Reiffeisen-Boerenlee B. A.*, 364 F. Supp.2d 346, 349 (S.D.N.Y. 2005)) at best, provide that a court may consider foreign law when considering a summary judgment motion, and do not establish Japan law applies in this case.

192, 201, 111 P.3d 601, 610 (2005); *Lewis v. Lewis*, 69 Haw. 497,
499, 748 P.2d 1362, 1365 (1988)(citing *Peters v. Peters*, 63 Haw.
653, 660, 634 P.2d 586, 591 (1981)).

The Hawai`i Supreme Court has apparently not adopted
one choice of law approach over another, but under any approach,
the result is the same.  The "fundamental policy factors . . .
deemed to underlie all choice-of-law decision[s]" applied by
Hawai`i courts include: "(1) predictability of result, (2)
maintenance of interstate order, (3) simplification of the
judicial task, (4) advancement of the forum's governmental
interests, and (5) application of the better rule of law."
*Mikelson*, 107 Hawai`i at 201, n.9, 111 P.3d at 610, n.9;
*California Fed. Sav. & Loan Assoc. v. Bell*, 6 Haw. App. 597, 606,
735 P.2d 499, 505 (1987).

      **2.    Hawai`i's Choice of Law Analysis Dictates that
            Hawai`i Law Applies Here.**

In this case:  (i) a foreign corporation (ii) sued a
Hawai`i LLC (iii) under a Hawai`i statute and other Hawai`i law
(iv) in a U.S. District Court sitting in diversity (v) regarding
fraudulent transfers of Hawai`i real property (vi) based on a
purchase and sale agreement signed in Hawai`i that is governed by
Hawai`i law.

The only connection to Japan appears to be that: (1)
the *kanzainin*/receiver for the Japan corporate reorganization was
in control of the SS Companies when the lawsuits were filed, and
(2) the U.S. SS Companies were formerly majority owned by

-8-

Plaintiff SS-Japan.  It is impossible to see how a Hawai`i court would apply Japan law under these facts to determine anything other than the powers of the *kanzainin* and the post-reorganization owner of the reorganized company.

First, as to predictability of result, if the defenses that can be asserted in response to claims under HUFTA depend on the citizenship of the plaintiff, the results could vary in each case and be unpredictable.  The Hawai`i courts would be unable to uniformly apply HUFTA and treat corporations' claims equally under the law.  The rights of creditors under HUFTA cannot vary under their citizenship.  *See Peters v. Peters*, 63 Haw 653, 665, 634 P.2d 586, 594 (1981)(refusing to apply foreign law, and applying Hawai`i law defense precluding interspousal tort claim allowed under foreign law).

Second, the uniform application of Hawai`i law *without* regard to the citizenship of the creditors (or their officers or shareholders) would assist interstate order because the application of Hawai`i law would be predictable, and not vary based on a creditor's citizenship.  *See id.*

Third, the KG Defendants' implied argument that Japan law applies across the board complicates the court's task of uniformly applying HUFTA because the parties' rights would be determined by the *ownership* of the plaintiff entity or citizenship of its directors and officers.  *See id.*

Fourth, the State of Hawai`i's interests will not be advanced:  (i) by non-uniform application of the law of

fraudulent transfers of Hawai`i property, or (ii) by making Hawai`i citizen plaintiff's claims subject to the application of foreign law.  *See id.*

Fifth, the KG Defendants have not established that Japan law is "better" in any results, or that it would lead to a more equitable results.  In fact, the KG Defendants' view of Japan law would give them a windfall.

Under the above analysis, even if a Hawai`i court were to apply the "most significant relationship" of the Restatement (Second) Conflicts of Laws or "governmental interests" approach, the result would be the same.  *Cf.* Decl. of Michihiro Mori ("Mori Decl.") at Ex. "M—1" (hereinafter "Mori Op.") at 1-2.[5]

### 3.    The KG Defendants Fail to Show that Japan Courts Would Apply Japan Law.

The KG Defendants have also failed to address the *renvoi* issue implicitly raised in their conclusory argument. Specifically, even assuming Japan law "governs", Japan choice of law rules also require application of Hawai`i law.  Mori Op. at 1-2.  Mr. Kosugi does not opine that Japan law would apply under these facts, or that Japan courts would apply anything other than Hawai`i law.  *Cf*. Kosugi Op. (Ex. K-1).

### 4.    Even Assuming Japan Law Applies, Mr. Kosugi's Opinion is Deficient and Wrong.

---

[5] The "Mori Op." refers to the opinion of the Hon. Michihiro Mori, Esq. regarding Japan law, which responds to Mr. Kosugi's opinion memorandum attached to the KG Defendants' Motion.  Mr. Mori's qualifications to provide the opinion are set forth in his declaration attached hereto.

The Kosugi Opinion merely states that, under Japan law, a Trustee in a Japan reorganization proceeding has no "special powers" and that the affirmative defenses "*may be asserted*" by the KG Defendants.  Kosugi Op. at 9-10.  Being "subject to" a defense that "may be asserted" *does not mandate* the application of the defense in this case or mean it would bar these claims.

The Kosugi Opinion does not change the Court's *proper* conclusion that the defenses raised by the KG Defendants *do not apply* in this case in light of the Osaka District Court's appointment of the innocent successor *kanzainin*.  Further, even assuming that Japan law applies to this case, and conclusively determines the manner in which this Court must apply the defenses the KG Defendants impliedly raised, the Kosugi Opinion and the KG Defendants are wrong.  *See* Mori Op., Ex. "M-1"

In fact, under Japan law a *kanzainin* (trustee/receiver) in a Japan reorganization proceeding will "never be subject to a defense which is based on the disloyal or improper acts of the debtor's previous management or previous owner," even where he is asserting the claims of the debtor.  Mori Op. (Ex. "M-1") at 3-4, 8-9.  Further, the successfully reorganized debtor succeeds to the rights of the *kanzainin*.  *Id.* at 9.  In short, under Japan law, in a case in which (1) the *kanzainin* caused the debtor SS-Japan and its subsidiary to file a lawsuit to recover property prior to the termination of the reorganization proceeding, and (2) the reorganization proceeding successfully concluded, the reorganized debtor is *innocent* of the acts and knowledge of its

610738_6 / 6850-5

-11-

former management and is allowed to proceed with the lawsuit without losing any rights. *Id.* at 6-9. In essence, the SS Plaintiffs do not suddenly become subject to equitable defenses raised by the KG Defendants simply because the Japan bankruptcy proceeding terminated while the lawsuit was pending. *Id.* Japan law supports the Court's decision that the Plaintiffs are not subject to the *in pari delicto*/imputation defenses impliedly raised by Defendants.

Even if one assumes *arguendo* that Mr. Kosugi's opinion establishes that Japan law applies in this case, the opinion is deficient because it fails to establish that:

1. Japan law defines or governs the defenses that the KG Defendants have impliedly raised in their MSJ (*in pari delicto*/imputation);

2. Japan law prohibits consideration of the Osaka District Court's immediate post-petition replacement of the Kinoshitas with an innocent successor *kanzainin* when this Court decided the applicability of the defenses the KG Defendants impliedly raised; and

3. under Japan law a *kanzainin* Japan in a reorganization proceeding is always bound by *in pari delicto*/ imputation type defenses when he/she causes a debtor company to bring claims under Hawai`i law attacking a fraudulent transfer.

4. under Japan law the SS Companies would legally be deemed the same as Toshio Kinoshita and his sons under Japan law, or that Toshio Kinoshita's alleged total control of both the SS Companies and his sons was an absolute bar to *all* the Hawai`i law claims brought by the Trustee.

**C.    The Court Correctly Applied U.S. Law in Determining That the *in Pari Delicto*/imputation Defenses Do Not Apply to the SS Plaintiffs.**

The KG Defendants argue the Court misapplied U.S. law because (1) Japan trustees are not "receivers," (2) reorganized debtors are subject to equitable defenses (MIS at 9-11), and (3) the Order's authorities do not support its legal conclusions. MIS at 12-14.  The KG Defendants' arguments are belated and wrong.  The Court correctly refused to apply the *in pari delicto*/imputation defenses and the "sole owner" exception as a matter of law.  The KG Defendants should not be allowed another bite at the apple by claiming that legal authorities they once argued were "irrelevant" now mandate summary judgment.  3/9/06 Reply at 2.[6]

**1.    The KG Defendants' Legal Arguments are Wrong and Belated.**

The Court properly ruled that the *in pari delicto*/imputation defenses and "sole actor" rule did ***not*** apply in this case, where an innocent *kanzainin* (trustee/receiver) had stepped

_____

[6] The KG Defendants never analyzed or argued *any* law regarding the equitable defenses they impliedly raised in their MSJ.  The KG Defendants cited only one case in their Reply regarding the "sole owner" exception and offered argument in a footnote.  3/9/06 Reply at 4, n.6.  Incredibly, the KG Defendants argued that a simplistic "self evident" proposition that "a person could not deceive himself" mandated judgment *as a matter of law.  See, e.g.*, 3/9/06 Reply at 1 & 11.  The KG Defendants should not now be allowed to complain the Court was not educated concerning their legal position, or to re-argue the same issues.  *Sabatino*, 2006 U.S. Dist. LEXIS 18540 at *5-*7, *12.

in to control the SS Companies for the benefit of the creditors of SS-Japan.[7]  Order at 15-18.

The KG Defendants claim that the *Lafferty* case controls and requires that the Court reverse itself.[8]  However, *Lafferty* actually supports the SS Companies' position.

*Lafferty* held that 11 U.S.C. § 541 precluded the court from considering post-bankruptcy petition events (such as the appointment of an innocent bankruptcy trustee who took control of the debtor) when deciding whether to apply the *in pari delicto*/imputation defense to the claims of the Creditor's Committee[9] brought on behalf of the debtor corporation.[10]  The KG Defendants simplistically equate a U.S. Bankruptcy Trustee with the *kanzainin*/receiver and argue–as if §541 had universal application–that *Lafferty* means this Court cannot consider post-

---

[7] The Court also found that, even if these equitable defenses applied (*e.g.*, the Plaintiffs did not stand in the shoes of the innocent *kanzainin* receiver), that: (a) factual issues exist which preclude summary judgment, and (b) KG has not shown that the "sole owner" exception applied as a matter of law. Order at 21-25.

[8] *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001).  *See* MIS at 10-11.  This case is cited for the first time in this Motion.

[9] The Creditor's Committee, which received an assignment of claims from the Trustee by stipulation, was deemed to be legally the same as a bankruptcy trustee, and its rights subject to 11 U.S.C. Section 541.  267 F.3d at 345 & 356.

[10] *Lafferty*, 267 F.3d at 357 ("The plain language of section 541 ... prevents courts from taking into account events that occur after the commencement of the bankruptcy case.  As a result, we must evaluate the *in pari delicto* defense without regard to whether the Committee is an innocent successor.").

petition events.  Defendants are wrong.  This Court is not sitting in bankruptcy, so § 541 is irrelevant.[11]

Apart from §541, the KG Defendants have not explained any substantive difference between a "trustee" and a "receiver."[12]  As the limit imposed by § 541 does not apply in this case, the Court properly deemed the *kanzainin* to be the legal equivalent of a "receiver."  Further, as the Court noted, the KG Defendants conceded: "at the hearing that a receiver (or outside creditor) would have standing to bring this suit."  Order at 16.[13]

---

[11]  Further, the KG Defendants have not shown that any other law prohibits the Court from considering the fact that *immediately* after the bankruptcy proceeding was filed in the Osaka District Court, the Kinoshitas lost control of the SS Companies to the innocent *kanzainin* who was acting on behalf of SS-Japan's creditors.  2/28/06 Stip in Lieu of Exs.

[12] The KG Defendants have not explained any substantive distinction between "trustees" and "receivers" and have incorrectly analyzed *Lafferty* and the other cases that they belatedly raise.  The KG Defendants' *attempt* to distinguish between "receivers" and "trustees," but fail to raise any difference other than the application of § 541, which does not apply outside of bankruptcy.  A "receiver" is otherwise essentially the same as a trustee:  "Formerly, in bankruptcy proceedings, a person empowered to take charge of the assets of an insolvent person or business and preserve them for sale and distribution to creditors.  This function is now performed by a bankruptcy trustee."  BLACK'S LAW DICTIONARY 1268 (6th Ed. 1990).

[13] The KG Defendants assert the Order is in error in stating that:  "KG Defendants ... conced[ed] at the hearing that a receiver (or outside creditor) would have standing to bring this suit."  MIS at 6, n.11; Order at 16.  The KG Defendants argue that "counsel only stated his clients would not have brought 'this motion' if an outside creditor were suing" and counsel "did not concede standing."  MIS at 6, n.11.  In fact, the transcript shows that Mr. Marks said:  "This motion wouldn't work with a receiver[,]" and went on to distinguish cases involving trustees (Hrg. Tr. at 23;20-24;3).  Mr. Marks later agreed that "standing"

Thus, *Lafferty* actually contradicts the KG Defendants' argument that the *in pari delicto*/imputation defenses apply in this case.  In fact, *Lafferty* supports the conclusion that this Court **properly**:

    (1)   Relied on *Scholes*[14] and *FDIC v. O'Melveny & Myers*[15] and properly analogized the *kanzainin* to the receiver and the innocent corporations discussed in those cases;

    (2)   Considered the *kanzainin* for SS-Japan as an innocent *receiver* who took control of the debtor to maximize the estate for creditors when the Court decided that the *in pari delicto*/ imputation defenses raised by the KG Defendants did not apply to the SS Plaintiffs; and

    (3)   Refused to apply the equitable *in pari delicto*/ imputation defense to the SS Plaintiffs/Companies because "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated," and "there is little reason to impose the same punishment on .. [an] innocent entity that steps into the party's shoes pursuant to court order or operation of law."  267 F.3d at 358 (quoting *Scholes* and *O'Melveny*).

---

was the *crux* of the KG Defendants' MSJ.  Hrg. Tr. at 28:7-8. Concessions at oral argument are binding in further proceedings. *Wagner v. Prof Eng'rs. in Calif. Gov't,* 354 F. 3d 1036, 1043 n.3 (9th Cir. 2004).

[14] *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995). *Lafferty* distinguishes this case and *O'Melveny* based on the ability of the court in those cases to consider post-petition (*i.e.*, post-bankruptcy filing) activities and events that may affect the application of such equitable defenses, as the plaintiffs' claims in those cases were not limited by Section 541.  *Lafferty*, 267 F.3d at 358.

[15] *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995).

The KG Defendants' other authorities do nothing to assist them.[16]

### 2.    *Scholes* and *O'Melveny* Clearly Apply and Support the Result.

The Defendants claim the *Scholes* and *O'Melveny* cases do not support the Court's conclusions.  MIS at 12-14.  They argue that these cases do not give a successor entity "special powers." *Id.*  The KG Defendants claim that the controlling analysis is guided by the statement in *O'Melveny* to the effect that a company which voluntarily purchases a debtor, and can adjust the purchase price, receives less consideration because of its inequitable conduct.  MIS at 13-14 (*quoting O'Melveny*, 61 F. 3d at 19).  The KG Defendants conclude that "neither *Scholes* or *O'Melveny* concern a trustee's powers under bankruptcy law, and are therefore not applicable here."  MIS at 14.

The KG Defendants' misstate the law, ignore facts, and are wrong for the following reasons:

First, as noted above, this is not a U.S. bankruptcy case, and the restriction in § 541 does not apply.

Second, the *kanzainin*/receiver caused the SS Plaintiffs to file their claims against the KG Defendants post-petition and while the reorganization proceeding was pending.  Neither the *kanzainin* nor his successor (the successfully reorganized SS-

---

[16] *In re Personal and Bus. Ins. Agency*, 334 F.3d 239 (3d Cir. 2003) and *In re Leasing Consultants*, 592 F.2d 103 (2d Cir. 1978), merely hold that U.S. bankruptcy trustees have some special powers.  MIS at 10, n.17.

Japan) were "a party to the original inequitable conduct nor [were they] in a position to take action [to prevent the Kinoshita's actions] prior to assuming [SS-Japan's] assets."  61 F.3d at 19.  These facts "place the receiver [*kanzainin*] in stark contrast to the normal successor in interest who voluntarily purchases [assets]."  *Id.*  In short, the logic of *O'Melveny* does not support the KG Defendants' vague argument.

Third, the KG Defendants fail to establish that *any* event or law would (1) cause the SS Plaintiffs to suddenly lose their claims after the successful completion of the Japan reorganization, or (2) suddenly subject them to the defenses the KG Defendants impliedly raised.

Fourth, the KG Defendants do not dispute that the distant affiliate of Goldman Sachs purchased SS-Japan through a court-approved reorganization plan.

Fifth, although the KG Defendants speculate that *Scholes* and *O'Melveny* "may have been affected" by some other law not applicable in this case, the KG Defendants fail to establish any actual effect of any other law or otherwise distinguish these cases.  MIS at 14, n.22.

Sixth, the Court did not rely on simple "dicta" from *O'Melveny* as the KG Defendants claim.  MIS at 14; Order at 18. The Court relied on the *central* reason for *O'Melveny's* holding that the successor in interest in that case was immune to imputation defenses.

Thus, the Court properly relied on *Scholes* and *O'Melveny* in holding the SS Plaintiffs *not* to be subject to the KG Defendants' implied affirmative defenses.

**D.    Factual and Legal Issues Remain Regarding Toshio Kinoshita's Control and Ownership of the SS Companies.**

The KG Defendants attempt to re-argue that there was no issue of fact as to whether Toshio completely controlled all the SS Companies.  MIS at 15-19.  The KG Defendants have not shown that Toshio owned *all* the interest in all the relevant SS Companies.  *Id.*  Defendants also rely solely on the testimony of Satoshi Kinoshita to arrive at their conclusion that Toshio Kinoshita also controlled his sons Toshiya and Takeshi, who owned a third of SS-Japan with Satoshi.  *Id.*  The KG Defendants presented no evidence that touches on Takeshi's or Toshiya's independent authority or control of the SS Companies.  The KG Defendants assume too much and prove too little.

The KG Defendants provide specific examples of Toshio's alleged total control regarding the transaction at issue and the RMS scheme, but the KG Defendants have not provided evidence that Toshio exerted exclusive control over all the SS Companies sufficient to allow the application of the "sole owner" exception as a matter of law.  There is no "strongly convincing" fact or law in the Motion, and none that the KG Defendants could not have presented previously, that should now induce the Court to reverse itself.

**E.    The Sole Actor Rule Does Not Apply as a Matter of Law.**

In its Motion the KG Defendants argue that the sole case they cited regarding the "sole actor" rule (in their Reply memo) mandates summary judgment in their favor.  MIS at 19-20; *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 165 (2d Cir. 2003) (applying Texas law to breach of contract and breach of fiduciary duty claims against CPA/Auditor).[17]

Again, the KG Defendants offer no "strongly convincing" argument and merely re-argue their MSJ.  In any case, they are wrong.

First, the KG Defendants' argument that the "sole actor" rule applies depends upon a faulty premise:  that the *in pari delicto*/imputation defense applies *at all* to this case.  The "sole actor" rule is really an exception to the "adverse interest" rule, which *itself* is an exception to the general rule of imputation under the *in pari delicto*/imputation doctrines.  However, this Court held the *in pari delicto*/imputation doctrines inapplicable under *Scholes* and *O'Melveny*, because an innocent receiver stepped into the shoes of the debtor and it would be inequitable to charge the SS Plaintiffs with the Kinoshitas' knowledge.  Order at 15-18.  *See also* Section C above.

_____

[17] The KG Defendants cited *Color Tile* for the first time in their 3/9/06 Reply at 4, n.6.

Second, the KG Defendants fail to provide *any* case law
that applies the "sole actor" exception despite where: (1) the
beneficial owners of the SS Companies (to whom the Kinoshitas
owed fiduciary duties) were the SS Companies' creditors, who had
direct claims to the Hawai`i assets; and (2) an innocent
*kanzainin/*receiver took control of the SS Companies through
operation of Japan law at almost the same time as the challenged
transfers.[18]

The other case relied upon by the KG Defendants is a
bankruptcy case that held that a creditors committee (similarly
situated with the trustee) had no standing to bring claims of
aiding and abetting fraud against a bank, attorneys, and
accountants. *In re The Mediators, Inc.*, 105 F.3d 822, 826 (2d
Cir. 1997)(applying New York law). *In re Mediators* did not apply
the "sole actor" rule to bar claims under HUFTA.[19] None of the

_____

[18] *See, e.g., Production Resources Group, LLC v. NCT Group,
Inc.*, 863 A.2d 772, 788 (Del. Ch. 2004)(when a corporation is in
the "zone of insolvency" officers and directors owe duty to a
corporations creditors, not its stockholders); *Carrieri v.
Jobs.com, Inc.*, 393 F.3d 508, 533-34 & n.24 (5th Cir. 2004)(even
corporations that were not actually insolvent, but which would
have been rendered insolvent by the transfers, are covered by
"zone of insolvency" analysis and directors and officers owe
fiduciary duties to all the creditors of the corporation); *In re
Zale Corp.*, 196 B.R. 348, 355 (N.D. Tex. 1996). *See UFJ Bank
Limited v. Ieda*, 109 Hawai`i 137, 139-140 & n.6, 2005 Haw. LEXIS
608 at *5, *6 & n.6 (Dec. 8, 2005)(Japan lenders rights of
subrogation under Japan law based on intercompany loans/debt
allow direct claims against Hawai`i subsidiaries of Japan
parent).

[19] No case cited by the KG Defendants applies the *in pari
delicto* /imputation doctrines outside of the bankruptcy context
to bar claims under the Uniform Fraudulent Transfer Act. Also,
the KG Defendants' other primary authority, *Color Tile*, suggests

Defendants' cases is controlling or "strongly convincing."  105
F.3d 822, 823 (2d Cir. 1997).

>    **F.    The KG Defendants' Voluntarily Admitted the Allegations
>           in the Complaint, Including Those Regarding
>           Intercompany Debt, in this Case.**

The KG Defendants argue the Order erroneously says that
the KG Defendants do not challenge the validity of underlying
debt *"in this case."*  MIS at 20-21; Order at 16, n.7.  SS does
not dispute that the KG Defendants stated their intent was merely
to admit the allegations in the complaint filed in this case for
the purposes of summary judgment.[20]

>    **G.    Toshio Was "Secretly Acting Adversely" to the SS
>           Companies and His Knowledge May Not Be Imputed to Them.**

The KG Defendants argue that the Court erred in finding
a genuine issue of material fact as to whether Toshio "acted
secretly" regarding the transfers to the KG Defendants.  MIS at
22; Order at 24, n.18.  Defendants claim that if Toshio's actions
were not "secret," his knowledge must be imputed to the SS
Plaintiffs.  This is wrong.

First, this Court held the *in pari delicto*/imputation
doctrines inapplicable to the SS Plaintiffs under *Scholes* and
*O'Melveny*, given the fact that the innocent *kanzainin*/receiver

---

that each claim must be separately analyzed to see if the *in pari
delicto*/imputation defense applies.  *See* 322 F.3d at 158-163.

[20] However, Plaintiffs note the Defendants did not simply
argue that the SS Plaintiffs had made "judicial admissions" that
bound only the *SS Companies*; they voluntarily and strategically
admitted even allegations they previously denied.

stepped in and took control of the SS Plaintiffs for the benefit of innocent creditors.  Order at 15-18.

Second, Defendants' reliance on Restatement (Second) Agency § 282 (1958) is misplaced.  That section provides that: "A principal is not affected by the knowledge of an agent in a transaction in which the agent *secretly is acting adversely* to the principal and entirely for his own or another's purposes[.]" *Id.* at § 282(1)(emphasis added); Order. 24, n.18.  The issue is not the secrecy of the act itself (*i.e.*, not whether Mr. Fukuda knew of the many transfers) but the secrecy of the *adverse nature* of the act, namely, whether Mr. Fukuda was aware that these transfers were unlike the recent sale of another SS hotel (the Diamond Head Beach Hotel), which was structured to protect the SS Companies and made for a fair price.[21]

Mr. Fukuda testified that Toshio and Satoshi kept the transaction to themselves.  SS CSOF, Fukuda Decl. at ¶ 22.  The KG Defendants admit that not all of the officers of Sports Shinko Mililani signed off.  MIS at 23.  Mr. Fukuda stated in effect that he and the International Business Division, responsible for

---

[21] *See, e.g.*, *FDIC v. Shrader & York*, 991 F.2d 216, 223 (5th Cir. 1993)("The paradigm case for applying this exception is where a bank's officer, on behalf of his bank, gives a corporation in which he has an interest a concession to which it is not entitled, such as a below-market price or rate of interest."); Fletcher Cyclopedia of the Law of Private Corporations § 820 ("Where an agent, *though ostensibly acting in the business of the principal, is really committing a fraud*, for his or her own benefit, the agent is acting outside of the scope of his or her agency, and it would therefore be most unjust to charge the principal with knowledge of it." (emphasis added)).

-24-

handling transfers of overseas property and preparing and issuing internal approval documents, were not involved.  SS CSOF; Fukuda Decl. at ¶¶ 22.

With the McCorriston law firm's assistance, Mr. Fukuda handled the sale of Hawai`i property, the Diamond Head Beach Hotel ("DHBH"), in March, 2001.  Fukuda Decl. at ¶ 12.  The DHBH sale involved an advance of funds to the purchaser, as did the transfers to the KG Defendants.  *Id.*  In the DHBH sale, the McCorriston law firm secured an advance to the buyer with a mortgage.  *Id.*  Mr. Fukuda thought the same basic structure was going to be used in this sale to protect SS and maximize payments to SS-Japan's creditors.  *Id.*  Mr. Fukuda did not know the details of the transfers to the KG Defendants, or that the sale had been completed by making a $9 million unsecured advance to the KG Defendants, and that none of the usual *ringisho* (corporate approval) procedures had been followed.  *Id.*  Had he known this, Mr. Fukuda would not have approved the sale.  *Id.*

Thus, the Kinoshitas' acts were "secret" within the meaning of the Restatement (Second) of Agency, and that rule, even if applicable, does not support imputing the Kinoshitas' knowledge to the SS Plaintiffs.

> **H.    The Order Correctly States That the STP Is Not Part of the Transfer That Plaintiffs Are Challenging in this Case.**

The KG Defendants complain that:  "The Order states: '... the Defendants have not presented evidence that the transfer of the sewage treatment plant was part of the same conveyance

that Plaintiffs are now challenging." MIS at 23; Order at 25, n.19. This is a repeat of the KG Defendants' argument that all the transfers from the respective SS Companies to the various KG Defendants were a single "bulk" transfer. MSJ at 23-26.

The January 15, 2002 Purchase and Sale Agreement between the SS Hawai`i subsidiaries and the KG Defendants (the "PSA") provided for, among other things, the transfer of the *stock* of the company that owned the sewage treatment plant ("STP"). KG CSOF at Ex. 26. However, the STP is not part of the transfer challenged in Civil No. 04-00182 ACK/BMK or the transfers challenged in the other consolidated cases.

The PSA was not itself a monolithic "transfer" of properties, but an agreement pursuant to which several transfers were set into motion.[22] The KG Defendants too readily gloss over the fact that *each* of the separate SS Companies was entitled to obtain the fair market value for its respective asset transfers.

In this light, the KG Defendants' argument that this was a "bulk sale" in which they bought the "good and bad" (MSJ at 23) is essentially an admission that they *knew* that the other SS Companies were getting less than fair market value for their golf courses and hotels, as the prices were depressed by the "liability" allegedly presented by the STP. MSJ at 25. It is nothing but further indicia that these were fraudulent transfers,

---

[22] The PSA was, on its face, subject to a due diligence period, after which the KG Defendants could renegotiate or stop the transfers. The PSA did not, in and of itself, transfer the properties.

especially given that the KG Defendants knew the SS Companies'
were being improperly caused to saddle their respective assets
with the alleged "liability" of Pukalani STP Co., Ltd., a
distinct entity which should survive or fail on its own.[23]
Further, the Plaintiffs have shown the STP was not a "liability"
at the time of the transfers to the KG Defendants by submitting
substantial cash offers for the STP and the Pukalani properties.
*See e.g.*, SS CSOF at Ex. "11".

     The Order is correct.

**I.    Defendants' FRCP 56(d) Request is Improper**

     The KG Defendants request the Court "'ascertain what
material facts exist without substantial controversy and what
material facts are actually and in good faith controverted' so
the parties can focus on the next round of discovery."  MIS at
26.  This request is improper because Rule 56(d) of the FRCP
applies only when a case is:  (a) partially adjudicated on a
Motion, and (b) it is "practicable" to comply.[24]

     The KG Defendants did not ask for, and the Court did
not grant, partial summary judgment.  Further, it is not

---

[23] Further, the KG Defendants have offered no authority that
*requires* the SS Plaintiffs to challenge transfers that were made
for reasonably equivalent value, such as the transfer of the
STP's stock.

[24] FRCP 56(d); 11 *Moore's Federal Practice*, § 56.40[2]
(Matthew Bender 3d ed)("Rule 56(d) provides that when  a ruling
is made which involves less than the entire case, the court
should review the evidence before it, including the pleadings,
and question counsel as to the most economical and expeditious
way to proceed with the case."); FRCP 56 Advisory Committee
Notes.

"practicable" to resolve all the factual issues for trial at this stage in the case, based only on the pleadings and limited exhibits submitted to the Court.  This request should be denied.

## IV.  CONCLUSION

Defendants have again asked this Court for relief without discussion of essential legal issues or sufficient legal authority.  For the foregoing reasons, the Motion must be denied.

DATED:    Honolulu, Hawai`i, May 22, 2006.


_____/S/ Glenn Melchinger_____
PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiffs
and Third-Party Defendants,
the SS Companies

610738_6 / 6850-5

-28-