PRICE OKAMOTO HIMENO & LUM

WARREN PRICE III          1212
ROBERT A. MARKS          2163
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Phone: 808.538.1113
Fax: 808.533.0549
e-mail: ram@pohlhawaii.com

GELBER GELBER INGERSOLL & KLEVANSKY

SIMON KLEVANSKY          3217-0
ALIKA L. PIPER           6949-0
CARISA LIMA KA'ALA HEE 7372-0
Suite 1400, Fort Street Tower
745 Fort Street
Honolulu, Hawaii 96813
Phone: (808) 524-0155
Fax: (808) 531-6963
E-mail: sklevansky@ggik.com
          apiper@ggik.com;
          kaalahee@ggik.com

Attorneys for Defendants, Counterclaimants
and Third-Party Plaintiffs KG HOLDINGS, LLC,
KIAHUNA GOLF CLUB, LLC, KG KAUAI
DEVELOPMENT, LLC, PUKALANI GOLF
CLUB, LLC, KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC, QK HOTEL, LLC,
and OR HOTEL, LLC ("KG PARTIES")

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | CV 04-00124 ACK-BMK |
| Plaintiff, | CV 04-00125 ACK-BMK |
| | CV 04-00126 ACK-BMK |
| vs. | CV 04-00127 ACK-BMK |
| QK HOTEL, LLC, et al., | CV 04-00128 ACK-BMK |
| Defendants, | CONSOLIDATED CASES |
| and | |
| | KG PARTIES' SUPPLEMENTAL |

| | |
|---|---|
| FRANKLIN K. MUKAI, et al.,<br><br>        Third-Party Plaintiffs,<br><br>    vs.<br><br>SPORTS SHINKO (USA) CO., LTD.,<br>et al.,<br><br>        Third-Party Defendants,<br><br>    and<br><br>SPORTS SHINKO (HAWAII) CO.,<br>LTD., et al.,<br><br>        Third-Party Defendants/<br>        Counterclaimants,<br><br>    vs.<br><br>QK HOTEL, LLC, et al.,<br><br>        Third-Party Counterclaim<br>        Defendants.<br><br>AND CONSOLIDATED CASES | MEMORANDUM IN SUPPORT OF<br>MOTION TO DISMISS CV NOS. 04-<br>00125 ACK-BMK, 04-00126 ACK-<br>BMK AND 04-00128 ACK-BMK;<br>DECLARATION OF ROBERT A.<br>MARKS; EXHIBITS 31 - 35;<br>DECLARATION OF MICHAEL A.<br>COHAN; EXHIBITS C-1 & C-2;<br>CERTIFICATE OF SERVICE |

2

## KG PARTIES' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS CV NOS. 04-00125 ACK-BMK,
04-00126 ACK-BMK AND 04-00128 ACK-BMK

Defendants, Counterclaimants and Third-Party Plaintiffs KG Holdings,

LLC, QK Hotel, LLC, OR Hotel, LLC, Pukalani Golf Club, LLC, KG Maui

Development, LLC, Mililani Golf Club, LLC, Kiahuna Golf Club, LLC and KG

Kauai Development, LLC ("KG Parties"[1]) hereby file their supplemental

memorandum pursuant to the Court's minute order of February 12, 2007 and

respond to the arguments made in the SS Companies' Supplemental Memorandum

filed February 22, 2007 ("SS Supp.Mem.").

The SS Supplemental Memorandum does nothing to advance SS's burden[2]

to prove that Hawaii was not SS-USA's principal place of business when these

actions were filed on February 20, 2004.[3]  To the contrary, the presumption against

---

[1]    Terms defined in prior pleadings filed in connection with the KG Parties'
Motion to Dismiss CV Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND
04-00128 ACK-BMK shall have the same meaning herein.

[2]    "Federal courts are presumptively without jurisdiction over civil actions, and
the burden of establishing that a cause lies within this limited jurisdiction rests
upon the party asserting jurisdiction." Gilliam v. Austin, 2002 WL 1034115, 3
(D.C. Cal. 2002) (Henderson, J.) quoted in 5B Wright & Miller, Federal Practice
and Procedure § 1350, n. 63 (2007).

[3]    Diversity is determined as of the date the complaint is filed. Grupo Dataflux
v. Atlas Global Group, LP, 541 U.S. 567, 571 (2004).

1

jurisdiction[4], and the presumption favoring an established domicile as against a

newly acquired one[5] weigh decisively in favor of granting the Motion to Dismiss.

I.    THE 2003 TAX RETURN IS FURTHER EVIDENCE THAT THE
      SUBSTANTIAL PREDOMINANCE OF SS-USA'S BUSINESS
      ACTIVITIES WERE IN HAWAII BY THE END OF 2003

Exhibit G-1 provided to the Court by SS with its Supplemental

Memorandum shows that at year end 2003, SS-USA *and each and every one of the*

*SS operating companies in the United States* – including the Florida and California

companies,[6] were using the Aiea, Hawaii address in their filings with the IRS.

This is further evidence of 1) SS-USA's principal place of business in Hawaii, and

2) the move to Hawaii of *all of SS-USA's subsidiaries outside of Hawaii* by the end

of 2003.

In addition, abundant evidence can be derived from the 2003 SS-USA

consolidated tax return that Hawaii was the center of corporate business activities

for SS-USA by December 31, 2003.  KG agrees that the principal place of business

---

[4]    See n.2, supra.

[5]    Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 502
(9th Cir. 2001) (finding a litigant had failed to prove a change in its principal place
of business and therefore holding the litigant to its representation about its
principal place of business in prior litigation). See also McCann v. George W.
Newman Irrevocable Trust, 458 F.3d 281, 287 (3d Cir. 2006); Lew v. Moss, 797
F.2d 747, 751 (9th Cir. 1986).

[6]    SS Ex. G-1 states that the corporate address for the SS California companies
(La Costa Hotel and Spa Corporation and Encinitas Resort Corporation) and SS
Florida companies (Sports Shinko Florida Co., Ltd., Sports Shinko (Florida Realty)
Co., Ltd., Sports Shinko Utility, Inc. and Grenelefe Realty, Inc.) is in Aiea, Hawaii.

of a parent corporation is typically not determined simply by the principal place of

business of its subsidiary. Danjaq v. Pathé Communications Corp., 979 F.2d 772

(9th Cir. 1992). To determine the parent's principal place of business, the Court

must examine the facts related to the parent corporation *standing alone.* Id.

That's where SS misses the boat in its analysis of the 2003 SS-USA

consolidated tax return. The comparison SS makes[7] – comparing the amount of

"investments in subsidiaries" of SS-Hawaii and SS Resort Hotel Corporation, on

the one hand, with "investments in subsidiaries" of the other entities filing the

consolidated tax return on the other hand, yields no relevant information

whatsoever as to where SS-USA's principal place of business is located.

The correct analysis looks at the amount of investment by parent corporation

SS-USA in its various subsidiaries. Since the business of a holding company is

investing in subsidiaries,[8] the relative amounts of SS-USA's investment in its

---

[7]    SS Supp.Mem. at 6.

[8]    "A 'mere' holding company has been defined as a 'corporation having
practically no activities except holding property and collecting income therefrom
or investing therein.' Treas. Reg. § 1.533-1(c)(1963)." In re Elsinore Corp., 228
B.R. 731 (9th Cir. BAP 1998). There is case authority that the principal place of
business of a passive holding company is the principal place of business of its
active subsidiaries. Bonar, Inc. v. Schottland, 631 F.Supp. 990, 996 (E.D.Pa.
1986); Hereth v. Jones, 544 F.Supp. 111, 112 (E.D.Va. 1982). See generally
discussion in Taber Partners I v. Merit Builders, Inc., 987 F.2d 57, 64 n. 9 (1st Cir.
1993) (distinguishing parent holding companies where the parent has its own
corporate operations from passive holding companies). Danjaq, where the parent
corporation had its own independent business activities, is therefore distinguished
from these cases. 979 F.2d at 773.

3

various subsidiaries reveals where SS-USA's own assets are located, not where its subsidiaries' assets are located.

The amounts that SS-USA invested in its subsidiaries can be gleaned from Exhibit G-2, one of the exhibits SS presented to the Court with its supplemental memorandum. Exhibit G-2 shows that over 99% of SS-USA's assets consist of its "investments in subsidiaries".[9] SS's Exhibit G-2 also shows that at the end of 2003, looking at SS-USA as a stand-alone, unconsolidated company, *68%* of SS-USA's investment in subsidiaries was in its Hawaii companies. In contrast, -10% and 42% of the total investment in subsidiaries was invested in SS-USA's California and Florida subsidiaries, respectively.[10] Of course, none of SS-USA's investment in subsidiaries is in Japan or West Virginia.

---

On this Motion, SS-USA has urged that SS-USA is only a passive holding company without its own business activities – which is all the more reason to conclude Hawaii was its principal place of business pursuant to the preceding authorities. See SS Mem.Opp. at 1, 2, 9, 11, 16, Iwamura decl. (1/25/07) at ¶¶ 6, 7 ("SS USA was at all relevant times a holding company that did not itself engage in **any** business in the United States." "SS-USA was a defunct corporation; it owned no properties and engaged in no activities other than administrative activities incidental to winding down its operations and pursuing this and other litigation." (emphasis added).

[9] See Declaration of Michael Cohan attached hereto ("Cohan decl.") ¶ 7, Declaration of Doreen Griffith dated February 22, 2007 at ¶ 5 and Ex. G-3.

[10] Cohan decl. ¶ 8-12; Ex. C-2 hereto (annotating SS's Ex. G-2). As Mr. Cohan discusses, the conclusion that the vast majority of SS-USA's "investment in subsidiaries" was its equity in SS-Hawaii by the end of 2003 is corroborated in other financial information produced by SS-USA's auditor, Grant Thornton, LLP. Id., ¶ 13.

4

The location of a company's assets is one of the key components of the
Ninth Circuit's test to determine a corporation's principal place of business.
Courts of this circuit are directed to look to factors such as "... location of
employees, **tangible property**, production activities, **sources of income**, and
where sales take place" in determining "substantial predominance." Tosco, 236
F.3d at 500, citing Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094
(9th Cir. 1990), (emphasis added.) And of course, these cases also counsel that the
"nerve center" test applies *only* when no single state is the location of the
substantial predominance of the party's activities. Id. Hence, the nerve center test
has no application here.

By the end of 2003, SS-USA's subsidiaries in Florida and California were
moribund[11]. The 2003 consolidated tax return confirms what other evidence
shows: that essentially all that was left of SS-USA by the end of 2003 was its
assets in Hawaii. The 2003 tax return complements the other compelling evidence
that the "substantial predominance" of SS-USA's activities were in Hawaii. Read
together with the other evidence, including SS-USA's sworn statement to the
Bankruptcy Court that Hawaii was its principal place of business in November
2002,[12] should leave the Court with no serious doubt that SS-USA has failed to

---

[11]    SS Mem.Opp. at 5.

[12]    Ex. 1. See also, e.g., exs. 20 (Iwamura on 9/15/02: "only significant
remaining operations in 2002 were in Hawaii"); 28 (Iwamura *circa* 2/11/04: Hayes

prove its principal place of business was not in Hawaii when these cases were filed

on February 20, 2004.[13]

---

has information for SS-USA's tax returns); 20.1 (Late December 2003/early Jan 2004: SS-USA notifies IRS and California franchise tax board about its change of address to Hawaii); 31 (6/29/04: Aiea address used for SS-USA reports to U.S. Treasury Department); 10, 11 & G-1 (9/7/04: Hawaii address for SS-USA (and its subsidiaries) given to tax authorities); 27 (10/20/04: Iwamura allows use of Hawaii address for SS-USA to continue).

[13]     Perhaps the most remarkable thing about the SS Companies' argument and supporting evidence about SS-USA's consolidated 2003 Federal tax return is that they have established that *SS-USA is not a creditor of its Hawaii subsidiaries.* Therefore, SS-USA is not a "creditor" under the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. Ch. 651C ("HUFTA"), and lacks standing to bring claims under HUFTA.

In their supplemental memorandum, the SS Parties represent to the Court that as of December 31, 2003, the assets of SS-USA consisted of four things: cash, "other current assets", "buildings and other depreciable assets" and "other assets". The substantial "other assets", they explain, consist **solely** of "*investment* in subsidiaries". "Other current assets", they explain, are "prepaid assets" amounting to only [REDACTED] SS Supp.Mem. at 5-6; Declaration of Doreen Griffith ("Griffith decl.") ¶¶ 4-6; Exs. G-2, G-3 & G-4. Notably, the "other current assets" and "other assets" do *not* include the inter-company loans receivable that were carried on SS-USA's books at the beginning of 2003. Read as a whole, SS-USA's 2003 Federal income tax return establishes:

- At the beginning of 2003, SS-USA's assets included [REDACTED] tion of "due from affiliates" – that is, inter-company loans receivable. Ex. 31 at GT032827. (Ex. 31 is comprised of excerpts from SS-USA's consolidated 2003 federal tax return, the face sheet of which was previously filed as Ex. 11.)

- At the end of 2003, SS-USA had *zero* "due from affiliates" assets. Ex. 32 at GT032838 (which was previously placed in the record by the SS Parties as Ex. G-3. It is also an excerpt from SS-USA's consolidated 2003 federal tax return).

Since SS-USA reported to the IRS that it eliminated all receivable assets from its subsidiaries and SS-Japan during 2003, there was no debt owing to

6

II.    SS-USA'S BANK ACCOUNTS SUPPORT THE CONCLUSION THAT
       SS-USA'S PRINCIPAL PLACE OF BUSINESS WAS IN HAWAII

In their opposition to the Motion, SS asserted – and offered sworn testimony

– that the Wells Fargo account was sited in West Virginia. They represented to

this Court:

- "SS USA's only bank account in the United States was located in West
  Virginia." SS Mem.Opp. at 22.
- "SS USA maintained a bank account in West Virginia for administrative
  expenses." Iwamura decl. filed with SS's Mem.Opp. at ¶ 7(n).

SS made these assertions in support of their argument that West Virginia was SS-

USA's principal place of business.

In their Supplemental Memorandum, SS is again forced to acknowledge that

their earlier sworn representations were false, now admitting that the Wells Fargo

account "was opened at a Wells Fargo branch in Southern California".[14]

Obviously, the existence of the California Wells Fargo account lends no support to

SS's argument that West Virginia was SS-USA's principal place of business.

More significantly, SS-USA had a ***Bank of Hawaii*** account in its name with

over $ ⟨REDACTED⟩ on deposit at the end of 2004, and ⟨REDACTED⟩ deposit on May

---

SS-USA at the end of that period. If, when these suits were filed, there was any
SS-USA receivable due from its Hawaii subsidiaries, it can only be an SS-USA
receivable created *after* December 31, 2003, and therefore, a receivable created
*after* the sale of assets to the KG Parties. This destroys SS-USA's standing to
bring HUFTA claims.

[14]    SS Supp.Mem. at 8; Iwamura supp. decl. ¶ 4.

7

1, 2004, just 9 weeks after these lawsuits were filed.[15] This, of course, is further evidence that Hawaii was SS-USA's principal place of business in the first half of 2004.

III.    THE MAUI LITIGATION ILLUSTRATES THE SS COMPANIES' PROCLIVITY FOR MINDLESS AGGRESSIVENESS IN LITIGATION

When the KG Parties acquired the SS Companies assets in Hawaii in January 2002, a 30½ acre parcel of undeveloped real property adjacent to the Pukalani Golf Course was to have been conveyed to KG. By virtue of a mistake – which the SS Parties conceded in discovery in this litigation[16] – this land was omitted from the property description attached to the deed that conveyed the other Maui lands. However, the SS parties refused to cure the mistake by conveying the omitted parcel.

For that reason, on July 19, 2006, KG sued SS-Hawaii and SS-Pukalani in the Hawaii Circuit Court of the Second Circuit to clean up this minor aspect of the overall dispute between KG and SS. Jurisdiction in the state court was proper because there was no diversity or other basis for federal jurisdiction between the parties to this narrow dispute.

---

[15]    Ex. 33 hereto. KG has been unable to establish when the Bank of Hawaii account was opened and has found no record of the account's existence before May 1, 2004. KG has no basis to dispute SS's representation to the Court that it was opened on a date after the lawsuits were filed on February 20, 2004.

[16]    Ex. 34 hereto.

8

In the Maui litigation, SS steadfastly resisted correcting the admitted mistake
in the deed, even though KG acknowledged, from the outset, that upon conveyance
to KG, the 30½ acres would remain subject to SS's federal claims.[17]  Instead, SS
aggressively litigated the Maui case to prevent the correction of the admitted
mistake.[18]

Circuit Judge Cardoza denied SS's motion to dismiss or stay on December 5,
2006 and granted KG's motion for summary judgment directing that the land be
conveyed to KG.  The oral ruling granting summary judgment was made on
February 21, 2007.  The form of the written summary judgment order is not yet
resolved.

IV.    SS-USA'S CORPORATE REGISTRATIONS DO NOT PROVE HAWAII
       WAS NOT SS-USA'S PRINCIPAL PLACE OF BUSINESS

SS-USA's failure to register to do business in Hawaii does not aid SS's
assertion of diversity jurisdiction.  The unrebutted record shows SS-USA was not
registered to do business in Japan or West Virginia,[19] the two places SS now
asserts were SS-USA's principal place(s) of business.  Since SS has the burden of

---

[17]    Ex. 35 hereto.

[18]    Declaration of Robert Marks attached hereto at ¶ 8.

[19]    Declaration of Takeo Kosugi, filed February 1, 2007 with KG's Reply
Memorandum (SS-USA was not registered to do business in Japan), and KG Reply
Ex. 21 (SS-USA was not registered to do business in West Virginia).

9

proving jurisdiction, this is at best neutral evidence as to SS-USA's principal place of business in February 2004.

KG also observes that SS has failed to show that SS-USA paid taxes in Japan or West Virginia in 2003 or 2004, as one would expect it to do if these were its principal places of business.

V.    CONCLUSION

When Keijiro Kimura, the president of SS-USA, signed his declaration in the Hawaii ancillary bankruptcy proceeding stating that Hawaii was SS-USA's principal place of business, there were near-contemporaneous events occurring to demonstrate this testimony was true.[20] These events continued after the complaints were filed.[21]

Regardless of self-serving, recent statements to support federal jurisdiction (which flatly contradict earlier sworn statements to support federal jurisdiction before the Bankruptcy Court), the record shows that when the complaints were filed on February 20, 2004, SS-USA consciously chose Hawaii to be its principal place of business.

---

[20]    See n.12.

[21]    Id.

10

Since the SS Parties have failed to meet their burden to prove SS-USA's principal place of business when the complaints were filed was not in Hawaii, the Motion should be granted.

DATED: Honolulu, Hawaii, February 28, 2007.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants, Counterclaimants and Third-Party Plaintiffs KG Holdings, LLC, QK Hotel, LLC, OR Hotel, LLC, Pukalani Golf Club, LLC, KG Maui Development, LLC, Mililani Golf Club, LLC, Kiahuna Golf Club, LLC and KG Kauai Development, LLC

11